UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas REESE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Linda REESE, Defendant-Appellant.

Nos. 84–5228, 84–5230.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 1985.

Decided Nov. 5, 1985.

Daniel J. Broderick, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Jerald W. Newton, Stephen Gilbert, Santa Monica, Cal., for defendant-appellant.

Before BARNES and REINHARDT, Circuit Judges, and GILLIAM,* District Judge.

REINHARDT, Circuit Judge:

Following a bench trial, Thomas Reese was convicted of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846 (1982) (count 1); possession with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1982) (counts 7, 9, 13 and 15); aiding and abetting violations of 21 U.S.C. § 841(a)(1) (1982) (counts 5 and 11); unlawful possession of a firearm, in violation of 18 U.S.C. app. § 1202(a)(1) (1982) (counts 23

---

* Honorable Earl B. Gilliam, United States District Judge for the Southern District of California, sitting by designation.

and 24); and unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b) (1982) (counts 16–20). Linda Reese, Thomas' wife and co-defendant, was convicted of conspiracy to possess cocaine with intent to distribute (count 1); aiding and abetting the sale of cocaine (counts 9 and 15); and possession with intent to distribute cocaine (count 11).

In this appeal, Thomas Reese challenges the sufficiency of the evidence supporting his convictions on all counts other than possession with intent to distribute and one count of aiding and abetting. Linda Reese challenges the sufficiency of the evidence supporting her convictions on all counts other than possession with intent to distribute. Both Reeses challenge the validity of the sentences imposed by the district court.

We conclude that with the exception of the firearms counts, there exists sufficient evidence to support those convictions that the Reeses challenge. Accordingly, we reverse Thomas Reese's convictions for unlawful possession of firearms and affirm the other convictions involved in this appeal. We further conclude that the sentences imposed on Linda Reese were valid and must be affirmed. However, a serious question exists as to the extent to which the sentences imposed on Thomas Reese were influenced by certain *ex parte* information submitted by the prosecution. We therefore vacate Thomas Reese's sentences and remand his case to the district court for resentencing.

## I. FACTUAL BACKGROUND

On June 30, 1983, two undercover special agents from the Drug Enforcement Administration, Greene and Brown, contacted Kevin Morgan at a Los Angeles gym to inquire into the possibility of establishing a regular connection for the purchase of cocaine. Morgan told the agents that he had a good source in Thomas Reese. He informed them of the price scale for cocaine and indicated that he would be willing to do business with them. Morgan also stated that he would introduce them to Reese's daughter Rhonda.

Morgan went to speak with Reese in another part of the gym. When he returned, he told Greene that Reese suspected that Greene and Brown might be police officers. Morgan stated that he would do business with them nevertheless and that he and Reese would "work out" Reese's suspicion. Morgan and Greene agreed to meet the following day at the same gym.

On the morning of July 1, 1983, Morgan arrived at the gym in a blue Rolls Royce with Thomas Reese II, the 12 or 13 year old son of Thomas Reese. Morgan told Greene that the boy had the ounce of cocaine that Greene had requested. Greene then gave $2,000 to Morgan, while the boy gave Greene approximately one ounce of cocaine.[1]

That afternoon, Brown and Greene again met with Morgan and Thomas Reese II. Morgan offered another ounce of cocaine, which he stated came from Rhonda Reese, but the agents declined the purchase. They told Morgan that they preferred to transact their business that evening at the Olympic Auditorium, when Thomas Reese and Rhonda Reese were to attend a fight.

The agents met Morgan at the Olympic that evening. Morgan told them to be seated and that they would do business later. During the bout, a young fighter approached the agents and asked whether they were interested in doing business. The agents told the fighter that they intended to do business with Morgan after the fight. The fighter then walked to where Reese was seated and spoke briefly with him.

When the fights ended, Reese approached the agents and introduced himself. Reese, members of his family, several associates and the agents went outside the auditorium. Two of Reese's associates looked closely at the agents and then re-

---

[1] We note that the evidence in the record demonstrates that Reese had no knowledge that his son would be involved in this transaction. In fact, the record clearly evinces the Reeses' anger at Morgan for having involved the boy in cocaine trafficking.

treated with Reese to a separate section of the parking lot where the three spoke quietly. Morgan subsequently emerged from the auditorium and, in exchange for $1,600, gave Brown an aluminum foil packet containing an ounce of cocaine. As the agents left, they observed Morgan approach Reese. Morgan and Reese then walked to a parked car and hovered over its hood.

Brown and Greene met again with Morgan on July 5, at which time Morgan told them that he had given Reese the money from the July 1 cocaine sale. With respect to that sale, the agents asked what Morgan and Reese had been doing while hovering over the hood of the car in the Olympic parking lot. Morgan stated that they had been examining the money to determine whether it was serialized. He also told them that Reese was angry with him because he still believed Brown and Greene to be police officers and that Reese had sold the blue Rolls Royce rather than allow the police to confiscate it.

The agents met Morgan again on August 2, 1983. Morgan stated that Reese was "paranoid" about the agents and wanted a reference from them, but that Morgan could introduce them to Rhonda Reese. To prove their authenticity, the agents brought Morgan to a fictitious "reverse sale" of narcotics in which $40,000 worth of heroin was "sold" to them by another undercover agent. After the purchase, Morgan indicated he would speak to Reese about a meeting with the agents. On September 3, 1983, Reese telephoned Greene and Greene returned the call. A luncheon meeting was set up for September 6 at a cafe in Los Angeles.

The meeting at the cafe included the agents, Thomas Reese, Linda Reese and Carlos Garcia. Thomas Reese stated that he had an Iranian source of heroin who owned a Mercedes-Benz dealership in the United States and whose father was one of the largest heroin dealers in Iran. He told the agents that he had already fronted $100,000 for ten kilograms of heroin. Reese indicated that he had been in the narcotics business since 1965 and had very high quality cocaine. He agreed to meet the agents on the following day to sell them three ounces of cocaine and give them a small sample of the heroin. At one point in the conversation, Linda Reese asked for and recorded Greene's telephone number in an address book.

On September 7, 1983, Greene had telephone conversations with each of the Reeses. In the first, Greene was told by Linda that Thomas was not at home. In the second, Thomas called Greene back and suggested a meeting at a street corner in Los Angeles. Later that day, Thomas Reese and Garcia arrived at the corner in a green Rolls Royce. Upon arrival, Reese gave Greene a package containing three ounces of cocaine and a small sample of heroin in exchange for $4,800.

On September 9, 1983, Greene and Brown met Thomas Reese in Las Vegas and discussed drug transactions in the presence of Linda Reese. On September 15, the Reeses again met with the agents at the same Los Angeles cafe in which they had met before. Thomas Reese told them that he received about 100 kilos of cocaine every two months, and that he was related to the largest heroin dealer in Oakland, California.

That evening, Reese met again with agents at the same Los Angeles street corner at which they had met previously, arriving with Linda Reese in a Datsun 280Z. Greene crouched beside the passenger side of the Datsun and counted out $12,400 for four ounces of cocaine and an ounce of heroin. He heard a zipper open and saw Thomas Reese reach into the area between the two front seats where a woman's purse was located. Reese then produced a packet containing the narcotics.

On September 27, 1983, Greene and Brown met the Reeses at a hotel room in Marina Del Rey, California. Linda arrived first in the green Rolls Royce and delivered a package containing five ounces of cocaine. When agent Greene asked her if she wanted the money, she instructed him to give it to Thomas when he arrived. She

then telephoned her husband and asked him to bring a scale so that the cocaine could be weighed. Thomas arrived in a red Corvette, delivered the scale, and took $7,500 from the agents. He stated that he owned millions of dollars worth of property, that he could supply any amount of cocaine and that he had five or six people working for him.

On September 30, the agents met Reese again at the cafe in Los Angeles. He supplied more details about his Iranian connection and gave the agents a quantity of heroin from the trunk of the green Rolls Royce in exchange for $12,000.

On October 12 and October 13, Greene called the Reese house from Chicago. Linda told him that Thomas was not at home. Thomas returned Greene's call on October 13. During this conversation, Reese stated that he was trying to raise $100,000 to purchase a quantity of heroin; that he had some heroin to deliver to the agents; and that the agents should call him when they returned to Los Angeles.

The Reeses met the agents on November 30, 1983, at a country club in Reseda, California. Thomas told them that if they bought a kilo of cocaine, he would advance the purchase price of a second kilo. Thomas did not know whether he could perform the sale the following day and asked Linda if a "girl" that she knew still had "the other thing." Linda laughed, stating that she did not know Thomas' "business."

On December 1, 1983, Greene received a message to call Thomas Reese. Greene telephoned Reese who then made arrangements to deliver cocaine to the agents. The Reeses met the agents at a hotel in Marina Del Rey, California. Reese retrieved the two kilos of cocaine from a concealed compartment in his car and gave them to Greene in exchange for $50,000.

He told the agents that he had another kilo that they could purchase the next day and that he had about five other customers who made kilo-size purchases. The Reeses were arrested as they attempted to leave the hotel room.

Subsequent to the arrest, Reese told Greene that the agents had missed ten kilos of narcotics because the agents had moved too slowly. On that same day, the Reeses' residence was searched pursuant to a warrant. A .44 magnum pistol was found in the house's largest room—a bedroom containing adult clothing. A semi-automatic rifle was found in the living room.

The Reeses moved to suppress all evidence seized from their residence. The motion was denied.[2] Following their convictions, the government filed a sentencing memorandum covering both defendants. Later on the same day, a supplemental sentencing memorandum was filed *in camera* directed only toward Thomas Reese.

## II. *ISSUES ON APPEAL*

The Reeses raise five issues that we must address on this appeal. The first two issues involve challenges to the sufficiency of the evidence supporting convictions for conspiracy and aiding and abetting. The third issue concerns the sufficiency of the evidence supporting Thomas Reese's firearms convictions. The fourth issue involves the sufficiency of the evidence supporting Thomas Reese's convictions for unlawful use of a communications facility. Finally, the fifth issue concerns the validity of the sentences imposed on the Reeses in light of *ex parte* information furnished to the district court by the prosecution.

### A. *Appellants' Conspiracy Convictions*

When confronted with a challenge to the sufficiency of the evidence on which an

---

**2.** Thomas Reese appeals the district court's denial of the motion. The house was searched pursuant to a warrant that was based, in part, on the fruits of a prior search of trash that had been placed in front of the Reeses' residence. Reese contends that the prior search of his trash was illegal and that the warrant for the search of the residence was therefore not valid. How-

ever, the only "tainted" evidence that Reese claims was obtained as a result of the search of the house was the two firearms, and they were used only as the basis for his convictions under 18 U.S.C. app. § 1202(a)(1) (1982) (counts 23 and 24). Because we reverse these two convictions on other grounds, we need not reach this issue.

appellant has been convicted, our task is to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Dahlstrom*, 713 F.2d 1423, 1425 (9th Cir.1983). In reaching our determination, we draw all reasonable inferences favorable to the government. *United States v. Multi-Management, Inc.*, 743 F.2d 1359, 1362 (9th Cir.1984).

■ The essential elements of conspiracy consist of "an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose and the requisite intent necessary to commit the underlying substantive offense." *United States v. Becker*, 720 F.2d 1033, 1035 (9th Cir.1983) (quoting *United States v. Sangmeister*, 685 F.2d 1124, 1126 (9th Cir.1982); *United States v. Melchor-Lopez*, 627 F.2d 886, 890 (9th Cir. 1980)). Although the government must show that at least two persons were involved in the conspiracy, *id.*, it need show neither direct contact nor explicit agreement among all of the alleged conspirators. *United States v. Abushi*, 682 F.2d 1289, 1293 (9th Cir.1982).

Appellants argue that although the superseding indictment charged a conspiracy involving the Reeses and Kevin Morgan, the evidence at trial failed to establish that Morgan was part of the conspiracy. Appellants reason that in the absence of sufficient evidence connecting Morgan to the conspiracy, the offense, as charged, was not established by the evidence.

■ Appellants' contention simply misconceives the nature of the conspiracy with which they were charged, as well as the applicable law. The superseding indictment charges that the objects of the conspiracy were accomplished when

> [d]efendant THOMAS "Tootie" REESE obtained cocaine and heroin and caused the cocaine and heroin to be distributed ... Defendant LINDA REESE trans-

ported and distributed cocaine and heroin for defendant THOMAS REESE. Defendant KEVIN MORGAN distributed cocaine obtained from defendant THOMAS REESE and introduced potential narcotics buyers to defendant THOMAS REESE.

Thus, appellants were charged with participation in a single conspiracy that included Kevin Morgan. However, whether there exists sufficient evidence in the record to connect Kevin Morgan to the charged conspiracy is an issue we need not determine. As we have previously held, the government's failure to connect an individual to a charged conspiracy is not a fatal variance. *United States v. Kaiser*, 660 F.2d 724, 730 (9th Cir.1981). Thus, even if the evidence in the record does not sufficiently connect Morgan to the conspiracy, the Reeses' convictions must be affirmed as long as there exists sufficient evidence to support *their* connections to the conspiracy. *See United States v. Peterson*, 549 F.2d 654, 657–58 (9th Cir.1977).

■ We conclude that the evidence in the record is sufficient to support the Reeses' conspiracy convictions. The evidence established that the Reeses jointly participated in arranging telephone communications between Thomas and agent Greene. In one instance, Linda Reese recorded Greene's telephone number so that further narcotics transactions could be made. Linda Reese also participated directly in the delivery of narcotics on September 27, during which she called Thomas, who, at her request, delivered a scale to weigh the cocaine. Moreover, Linda Reese participated in the delivery of narcotics by Thomas on the day of their arrests.

■ The record also discloses Linda Reese's presence during several meetings between Thomas and the agents at which narcotics transactions were discussed. In addition, she was present with Thomas on September 15, 1983, when he delivered narcotics to the agents. While mere proximity to the scene of illicit activity is, without more, insufficient to infer a nexus to a

conspiracy, a defendant's presence may nevertheless be probative of that nexus when viewed in the context of other evidence. *See United States v. Perez,* 658 F.2d 654, 660 (9th Cir.1981). In light of the evidence of Linda Reese's direct involvement in a scheme to possess and distribute narcotics, her presence at the meetings and transactions in question is highly probative of her connection to the charged conspiracy. Viewing all the evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found Linda Reese guilty beyond a reasonable doubt of the essential elements of conspiracy, regardless of Morgan's role in the venture. It follows *a fortiori* that there was more than sufficient evidence to support Thomas Reese's conspiracy conviction.

### B. *Aiding and Abetting*

■ Both Reeses were convicted of aiding and abetting the commission of an offense against the United States, in violation of 18 U.S.C. § 2 (1982). As used in the statute, "aiding and abetting" means "to assist the perpetrator of a crime." *United States v. Barnett,* 667 F.2d 835, 841 (9th Cir.1982). "In order to aid and abet another to commit a crime, it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed.'" *United States v. Batimana,* 623 F.2d 1366, 1369–70 (9th Cir.1980) (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938)), *cert. denied* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1981). The abettor's criminal intent may be inferred from the attendant facts and circumstances and need not be established by direct evidence. *See United States v. Groomer,* 596 F.2d 356, 358 (9th Cir.1979).

■ Thomas Reese challenges his conviction for aiding and abetting Morgan's July 1, 1983 sale of an ounce of cocaine to Greene and Brown. Reese contends that the evidence indicates that Morgan acted without assistance or encouragement.

However, our review of the record demonstrates precisely the opposite. The record contains admissions by Reese that he was engaged in the drug business and that Morgan had received the cocaine that he sold to the agents from an individual who worked for Reese. The record also contains admissions by Reese concerning his fear that Brown and Greene were narcotics agents and his intention to determine their status. Finally, the record contains testimony that Reese assisted Morgan in determining whether the money used by the agents to purchase the cocaine was serialized. Viewing this evidence in the light most favorable to the government, we conclude that the evidence was sufficient to support Reese's conviction for aiding and abetting the July 1, 1983 sale of narcotics.

Linda Reese was convicted of aiding and abetting the September 15, 1983 and December 1, 1983 narcotics sales. Linda contends that the evidence established only her presence at these transactions and was therefore insufficient to support her convictions. We disagree.

The record discloses that Linda aided Thomas by recording Greene's telephone number so that future narcotics transactions could take place. Linda also took telephone messages for Thomas from Greene, whose only relationship to Thomas was, as she was aware, that of a prospective narcotics purchaser. In addition, Thomas produced the narcotics sold on September 15, 1983 from a small area in his car in which a woman's purse was located, and Linda was the only woman in the car. Finally, the record indicates that Linda aided the December 1, 1983 sale by driving the car in which the narcotics were concealed to the location of the meeting with the agents.

Linda Reese contends that there is insufficient evidence of her intent. Once again, we must disagree. In light of her conduct, we conclude that a rational factfinder could have inferred intent, beyond a reasonable doubt, from the surrounding facts and circumstances. *See Groomer,* 596 F.2d at 358. We therefore find that sufficient evi-

dence exists to support Linda Reese's convictions for aiding and abetting the September 15, 1983 and December 1, 1983 sales of narcotics.

### C. *Thomas Reese's Firearms Convictions*

■ Thomas Reese was convicted on two counts of unlawful possession of firearms, in violation of 18 U.S.C. app. § 1202(a)(1) (1982).[3] These convictions arose from the discovery of two firearms during the search of the Reeses' residence subsequent to their arrest. The searching officers discovered a semi-automatic carbine behind a painting in the living room and a revolver under a pillow in a bedroom. With respect to these convictions, Reese contends that the evidence introduced at trial was insufficient to establish his constructive possession of the firearms.[4] We agree.

■ Although the firearms were discovered at Reese's house, Reese was not the only person residing there at the time the guns were found. Where, as here, a residence is jointly occupied, the mere fact that contraband is discovered at the residence will not, without more, provide evidence sufficient to support a conviction based on constructive possession against any of the occupants. In *United States v. Delgado,* 327 F.2d 641 (9th Cir.1964), we reversed two defendants' convictions for possession of contraband that had been based solely on the fact that the contraband was found on property they both occupied. A quantity of marijuana had been discovered pursuant to a search of a bedroom shared by the defendants. The marijuana was found in a drawer of a nightstand that may have been used by either or both of them. In reversing the convictions, we reasoned that

it is pure speculation as to whether [one defendant] alone, or [the other defendant], alone, or both of them, had possession. No doubt one ... did; perhaps both did. But proof that does not give a rational basis for resolving the doubts necessarily present in the situation pictured to the jury in this case is not sufficient.

*Id.* at 642. *See also United States v. Di-Novo,* 523 F.2d 197 (7th Cir.), *cert. denied,* 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975) (where evidence that defendant had constructively possessed heroin was limited to proof that heroin was found at a residence in which defendant resided with her husband, and government failed to adduce evidence specifically linking heroin to defendant, conviction was not supported by sufficient evidence); *United States v. Craven,* 478 F.2d 1329, 1333 (6th Cir.1973) (possession of a residence is insufficient to establish possession of all the contents of the house, but evidence of defendant's constructive possession of house combined with admissions that he collected guns was sufficient to establish constructive possession of an unregistered firearm).

In *United States v. Chesher,* 678 F.2d 1353 (9th Cir.1982), we addressed this issue in the context of a prosecution for manufacturing methamphetamine. The evidence in *Chesher* established that Chesher lived in his mother's house, which contained a methamphetamine laboratory in the back room. The door to the laboratory had been fitted with a latch and padlock which could be opened with a key that Chesher had in his possession when he was arrested. In addition, two of Chesher's fingerprints were found on a piece of equipment in the

---

**3.** 18 U.S.C.App. § 1202(a)(1) (1982) provides, in relevant part, as follows:

Any person who—
(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, ... and who receives, possesses, or transports in commerce or affecting commerce ... any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

**4.** In the alternative, Reese contends that in the absence of any showing that the firearms were acquired and stored at different times and places, the weapons cannot form the basis for separate counts. Because both of the convictions must be reversed on other grounds, we do not rest our decision on this argument. We do acknowledge, however, that it is correct. *See United States v. Wiga,* 662 F.2d 1325, 1336 (9th Cir.1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982).

laboratory. A small amount of methamphetamine was also found in Chesher's bedroom.

Although we ultimately concluded that there existed sufficient evidence to support Chesher's conviction, our conclusion was expressly predicated on the fact that the contraband discovered in Chesher's bedroom linked him in a possessory sense to the laboratory. We reasoned that

> [t]he house itself belonged not to Chesher but to his mother, and a third adult lived there as well ... The circumstantial evidence of the fingerprints on the equipment and the key in Chesher's possession are incriminating, but without the additional evidence of the methamphetamine in Chesher's bedroom a finding of guilt beyond a reasonable doubt is unsupported by substantial evidence.

*Id.* at 1358. Thus, Chesher's presence in the residence and his access to the laboratory was not, without more, sufficient to support his conviction.

Here, the only evidence in the record tending to support Reese's convictions consists of his occupation of the house in which he resided with his wife. Although

one gun was found under a pillow in the largest bedroom of the house, there is no evidence suggesting that the pillow under which it was found was used by Reese or even that he used that bedroom. Nor were his fingerprints found on either gun. Here, as in *Delgado,* it is "pure speculation" as to which of the house's occupants possessed the guns.[5] In the absence of any evidence more specifically connecting Thomas Reese to the firearms, there exists insufficient evidence to support the convictions.[6] We therefore reverse the two firearms convictions.

D. *Thomas Reese's Convictions for Unlawful Use of a Communication Facility*

 A conviction under 21 U.S.C. § 843(b) (1982)[7] requires the (1) knowing or intentional (2) use of a communications facility (3) to aid or facilitate the felonious distribution of narcotics. *United States v. Whitten,* 706 F.2d 1000, 1006 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). To "facilitate" within the meaning of the statute is merely to make easier or less difficult. *United*

---

**5.** Since the finder of fact was not provided with any evidence tending to show that, as a general matter, narcotics traffickers use guns, we need not decide whether, and under what circumstances, such evidence could give rise to an inference of possession. Related to this, we do not intend to suggest that such evidence could not give rise to an inference of possession for purposes of obtaining a search warrant or justifying a warrantless search. Frequently, in affidavits supporting requests for warrants, officers state, based on their experience, that narcotics dealers possess weapons. Such statements certainly are appropriate and may be considered by magistrates in deciding whether to issue a warrant.

**6.** Our decision in *United States v. Alverson,* 666 F.2d 341 (9th Cir.1982), does not compel a different conclusion. In *Alverson,* we affirmed a conviction for possession of an unregistered machine gun, in violation of 18 U.S.C. § 5861(d) (1982), concluding that the evidence supported a finding that the defendant had constructively possessed the guns by maintaining dominion and control over the premises on which the guns were found. However, in *Alverson,* there was no evidence to suggest that anyone other than the defendant lived in or around the prem-

ises. Moreover, we specifically noted that Alverson had not disputed the government's contention that if his ownership of the premises was established, the prosecution would have proven his constructive ownership of the weapons. *Id.* at 345 n. 2. Thus, the *Alverson* court specifically declined to address the issue raised here, cautioning that "proof that a particular residence is that of the defendant might not always provide sufficient evidence to establish constructive possession of every item in the residence...." *Id.*

**7.** 21 U.S.C. § 843(b) (1982) provides as follows:
It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

*States v. Phillips*, 664 F.2d 971, 1032 (5th Cir.1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

■ Thomas Reese contends that because certain telephone calls were placed by Agent Greene, and not by Reese, Reese's conduct did not constitute "use" of a communications facility within the meaning of 21 U.S.C. § 843(b) (1982). This contention is without merit. In order for Reese's convictions to stand, the evidence need only establish his "willing participation" in the telephone conversations at issue. *United States v. Rodriguez*, 546 F.2d 302, 307 (9th Cir.1976).

Reese's convictions are clearly supported by sufficient evidence. Each of the charged telephone calls involved prospective narcotics transactions, and Reese willingly participated in each of them for the purpose of furthering his unlawful narcotics trade. Accordingly, we affirm Reese's five convictions for unlawful use of a communications facility.

### E. The Validity of the District Court's Sentencing Procedure

The Reeses' final challenge is to the legality of their sentences. Thomas Reese was sentenced to fifteen years on count one, ten years on count seven and ten years on count nine, the sentences to run consecutively. Reese also received sentences of ten years on each of counts five, eleven, thirteen and fifteen, and one year and one day on each of counts sixteen through twenty, twenty-three and twenty-four, to run concurrently with his other sentences. The district court imposed a fifteen-year special parole term on counts seven and nine. Linda Reese was sentenced to ten years on each of counts one, nine, eleven and fifteen, to run concurrently, with a special parole term of five years imposed on counts nine, eleven and fifteen.

■ The Reeses contend that their sentences were based, in part, on the district court's consideration of written material submitted *ex parte* by the prosecution. We have carefully reviewed that material and have determined that none of it related to Linda. Rather, information contained in the submission related only to Thomas. Thus, even if the district court did consider the information, we are unable to conclude that it had any bearing on Linda Reese's sentences. We therefore affirm the sentences imposed on her by the district court.

Subsequent to trial, the government filed a request for a hearing under the Special Drug Offender Statute, 21 U.S.C. § 849 (1982), to determine whether Thomas Reese was a special drug offender.[8] Ordinarily this statutory procedure is invoked when

---

**8.** 21 U.S.C. § 849(b) (1982) provides, in relevant part, as follows:

> Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant of such felonious violation, a hearing shall be held, before sentence is imposed, by the court sitting without a jury. The court shall fix a time for the hearing, and notice thereof shall be given to the defendant and the United States at least ten days prior thereto. The court shall permit the United States and counsel for the defendant, or the defendant if he is not represented by counsel, to inspect the presentence report sufficiently prior to the hearing as to afford a reasonable opportunity for verification. In extraordinary cases, the court may withhold material not relevant to a proper sentence, diagnostic opinion which might seriously disrupt a program of rehabilitation, any source of information obtained on a promise of confidentiality, and material previously disclosed in open court. A court withholding all or part of a presentence report

shall inform the parties of its action and place in the record the reasons therefor.... If it appears by a preponderance of the information, including information submitted during the trial of such felonious violation and the sentencing hearing, ... that the defendant is a dangerous special drug offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felonious violation. Otherwise it shall sentence the defendant in accordance with the law prescribing penalties for such felonious violation. The court shall place in the record its findings, including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed.

21 U.S.C. § 849(d) (1982) provides:

> Notwithstanding any other provision of this section, the court shall not sentence a dangerous special drug offender to less than any

the prosecution seeks to have the court impose longer sentences on a defendant than it might otherwise order. On July 16, 1984, the prosecution filed its regular sentencing memorandum, which covered both Reeses, with the district court. As is required, a copy was furnished to defense counsel. At the same time, the prosecution filed a second sentencing memorandum *in camera* directed only toward Thomas Reese in support of its request for a hearing under the Special Drug Offender Statute. Defense counsel was denied access to this submission. The second submission consisted of four documents: a pre-sentence report on Thomas Reese that had been prepared in connection with a previous conviction for receiving a firearm while under indictment; grand jury testimony by a witness in connection with a prior narcotics investigation; and two confidential declarations relating to alleged on-going narcotics trafficking by Reese.

On July 18, 1984, the government filed 10–15 pounds of additional material in support of its first sentencing memorandum. The supporting material, like the first memorandum, was provided to defense counsel.

On July 19, 1984, the district court conducted the first of two proceedings relating to the question of sentencing. At the first proceeding, the district court stated that it did not intend to sentence Thomas Reese in accordance with the provisions of the Special Drug Offender Statute. The court proposed tabling the government's motion for a section 849 hearing and, in light of the court's stated intention, the government agreed. Defense counsel then requested a continuance so that the defendants could

have an opportunity to review the massive amount of material filed by the government in connection with the first sentencing memorandum. The court granted defense counsel's request, noting that it had read the material and that defense counsel should have an opportunity to rebut it since the court could not say that it would not rely in part on the material at the time of sentencing and would be unable to "quantify the degree of reliance ..." or the effect that having read it might have.[9]

On July 25, 1984, the district court conducted the second sentencing proceeding. At this time, defense counsel specifically requested access to the sentencing memorandum filed *ex parte* by the prosecutor. This request was denied. Defense counsel also attempted to rebut certain information contained within the 10–15 pounds of material filed by the government in connection with the first sentencing memorandum. In the context of this rebuttal, the district judge indicated that material that had been submitted by the government that did not involve the offenses for which Reese had been convicted would not be considered when the court imposed sentence.[10]

We have repeatedly held that it is improper for the prosecution to make, or for the court to receive from the prosecution, *ex parte* communications bearing on a sentence. *See, e.g., United States v. Wolfson,* 634 F.2d 1217, 1221–22 (9th Cir.1980) (where record strongly suggested that district court relied on prosecution's *ex parte* sentencing report, receipt of report was error requiring remand for resentencing); *United States v. Perri,* 513 F.2d 572, 574 (9th Cir.1975) (where district court sentenced defendant on the basis of informa-

---

mandatory minimum penalty prescribed by law for such felonious violation. This section shall not be construed as creating any mandatory minimum penalty.

**9.** In response to a defense counsel inquiry, the court stated:

I've looked at some of the material in there. And the fact that I have puts me to a finer test than I want to be put about the reliance that I place on any event, frankly. I don't think it's meaningful for me to try to quantify the degree of reliance that I put on it or what effect

it has on my judgment. I think my judgment is going to be made independently of that material but I—at the same time I would not want it to be said that I didn't read it. I've read part of it.

**10.** Defense counsel articulated his concern that as a result of the government's public submissions he was in a position of having to rebut a large amount of tangential information, to which the court replied, "Oh, you really aren't. I looked at the material, but in point of fact, I'm going to sentence Mr. Reese for what he did in this case."

tion contained in a confidential report submitted by prosecution, sentence was invalid and case was remanded for resentencing).

The government argues that the *ex parte* information was properly before the district court because it was submitted in connection with the government's request for a hearing under 21 U.S.C. § 849 (1982). Implicit in this argument is the proposition that section 849 authorizes the prosecution to furnish the court with *ex parte* information. The government's argument, however, conflicts with the plain language of the statute.

 Section 849 authorizes the court, in extraordinary cases, to withhold material contained in the defendant's *presentence report.*[11] Unlike a sentencing memorandum, which is prepared by the prosecution, or the defense, the presentence report is generally prepared by the United States Probation Service, *see* Fed.R. Crim.P. 32(c), 18 U.S.C. § 3552(a) (1982), which provides a neutral, third party analysis of the defendant's background and his prospects for rehabilitation.[12] There is no suggestion in the language of section 849 that the function of preparing presentence reports was to be transferred to the prosecution or that the prosecutor—an obviously interested party—was to be authorized to submit *ex parte* sentencing material to the court. Accordingly, we conclude that section 849 does not provide for the *ex parte* submission of material to the court by the prosecution. Because the information herein involved was not disclosed to the defense, any reliance placed on it by the district court was clearly improper. *See Wolfson,* 634 F.2d at 1221; *Perri,* 513 F.2d at 575.[13]

The government also contends that even if its *ex parte* submission of material was improper, the district court's statements at the time of sentencing establish that the sentences imposed on Thomas Reese were not based on any such information. The government first points to the district court's statement that it intended to sentence Reese "for what he did in this case." *See* n. 10, *supra.* The government next points to the substance of the *ex parte* submission, arguing that it contains no information concerning the offenses for which Reese was convicted. Thus, the government reasons that the sentences imposed by the district court escaped any influence from the *ex parte* submission.

The government is correct in its limited assertion that none of the material filed *ex parte* related to the specific transactions for which Reese was convicted. We are not convinced, however, that at the time of sentencing the district judge was free of influence from that material. We find it significant that there is no statement in the record suggesting that the district judge did not read the material that was filed with the court. In denying defense counsel's request for access to the second memorandum, the district judge made no statement indicating that he was unaware of its contents. We therefore find it appropriate to presume that the district judge had knowledge of the information contained in the *ex parte* submission.

The government is also correct that at the time of sentencing the district court indicated an intention to sentence Reese on the basis of his conduct in the present case. However, it is also true that six days prior to the imposition of sentence, the district

---

**11.** The confidentiality provision of § 849 is similar in many respects to the comparable provision of the Federal Rules that governs other presentence reports, although there are significant differences. *Compare* 21 U.S.C. § 849(b) (1982) *with* Fed.R.Crim.P. 32(c)(3).

**12.** We note that in some cases, a presentence report may be prepared by the Bureau of Prisons. *See* 18 U.S.C. § 3552(b) (1982).

**13.** Even if the prosecution's reading of the statute were correct, its argument would be una-

vailing in light of the district court's failure to follow the procedures prescribed by section 849. The statute provides, *inter alia,* that where the court withholds all or part of a presentence report, it "shall inform the parties of its action and place in the record its reasons therefor ..." 21 U.S.C. § 849(b) (1982). Here, the district court merely rejected defense counsel's request for disclosure of the *ex parte* information, offering no explanation for its decision to withhold the material.

court stated that it could not disclaim reliance on certain other material that had been properly submitted and disclosed by the prosecution—material that included information unrelated to the offenses for which Reese had been convicted. Moreover, the *ex parte* submission contained information tending to show that Reese's conduct in the instant case was part of a continuing pattern of drug dealings. Under all the circumstances, we cannot say with any certainty that the sentencing judge could avoid being influenced by the *ex parte* submission. We agree with his initial comments that determinations of that nature require a "finer test" than is reasonable to impose.

Although we acknowledge the ability of a district court to limit its sentencing considerations to discrete bodies of information, in this case the judge's conflicting statements, made less than one week apart, together with the substantial similarity between the information contained in the *ex parte* submission and the conduct for which Reese was convicted, raise a serious question concerning the possibility of reliance, conscious or otherwise, on the *ex parte* submission. Notwithstanding the district court's conscientious efforts to assure that the sentencing proceedings were conducted in as fair and equitable a manner as possible, we believe the question is sufficiently serious to warrant resentencing. *See United States v. Alverson,* 666 F.2d 341, 349 (9th Cir.1982) (where question existed as to whether district judge had relied on improper *ex parte* communication, case remanded for resentencing). Accordingly, we vacate Thomas Reese's sentences and remand the matter for resentencing.[14]

## III. CONCLUSION

The record contains sufficient evidence to support the Reeses' convictions for conspiracy to possess cocaine with intent to distribute and aiding and abetting. The record also contains sufficient evidence to support Thomas Reese's convictions for unlawful use of a communication facility. We therefore affirm these convictions.

The evidence in the record is not sufficient to support Thomas Reese's convictions for unlawful possession of a firearm. Accordingly, we reverse those two convictions.

Finally, we conclude that although the sentences imposed on Linda Reese are valid and must be affirmed, a serious question exists as to whether the *ex parte* information improperly submitted to the district court by the prosecutor affected the length of Thomas Reese's sentences. We therefore vacate his sentences and remand his convictions to the district court.

AFFIRMED in part, REVERSED in part and REMANDED.

---

**14.** Having concluded that a serious question exists as to whether the district court relied on the improperly submitted *ex parte* material, we would ordinarily next consider whether the case should be remanded to a different judge for purposes of resentencing. *See, e.g., Alverson,* 666 F.2d at 349–50; *Wolfson,* 634 F.2d at 1222.

However, in his brief, appellant waived the right to have his case assigned to another judge. Since the parties appear to be in agreement that any resentencing should be conducted by the original trial judge, we see no reason to consider the question of reassignment further.