980 F.2d 739
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Scott McCurdy, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pamela McCurdy, Defendant-Appellant.
 Nos. 91-50558, 91-50576.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 6, 1992.*
Decided Dec. 4, 1992.
 
 Before POOLE, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John Scott McCurdy and Pamela McCurdy appeal their convictions following jury verdicts for conspiracy to import marijuana and importation of marijuana, in violation of 21 U.S.C. §§ 952, 960, & 963, conspiracy to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). We affirm.
 
 
 3
 A. The Denial of Evidentiary Hearings on John's Motion to Suppress
 
 
 4
 We review a district court's decision to conduct an evidentiary hearing for an abuse of discretion. United States v. Mejia, 953 F.2d 461, 465 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992). "An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable to the court to conclude that contested issues of fact" going to the legality of the government's conduct are in issue. United States v. Walczak, 783 F.2d 852, 857 (9th Cir.1986). Evidentiary hearings on motions to suppress on voluntariness grounds are required where "substantial facts are in dispute." United States v. Jenkins, 785 F.2d 1387, 1394 (9th Cir.), cert. denied, 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986).
 
 
 5
 John argues that evidentiary and voluntariness hearings were required on his motion to suppress his statements to agent Henry. John focuses on the supposedly conflicting testimony offered by agents Henry and Palmer. While Palmer testified that upon opening the trunk he detected a strong odor of marijuana and saw marijuana in plain view, Henry--who looked into the trunk some minutes earlier--testified to neither the smell nor the sight of marijuana. From this John argues that the marijuana may have been clearly apparent to Henry at the time he asked John whether he owned the suitcases in the trunk. If so, the argument goes, Henry would not only have had probable cause to arrest at that time, but his questioning would have been inherently coercive and indicative of a custodial interrogation.[1]
 
 
 6
 Here, the only possible disputed fact concerning when probable cause arose or when John was actually arrested was whether agent Henry could see or smell the marijuana when John opened the trunk. The only support for that conclusion is an inference based on agent Palmer's testimony. John presented no evidence that he saw or smelled marijuana himself.[2] In fact, he suggests that his defense is, in part, that he did not even know the marijuana was in the trunk. Rather, John's motion papers contained vague and conclusory allegations that his statements to agent Henry were involuntary because they were "compelled under color of legal authority." As this court has held, "[a] hearing is not required if the grounds for suppression consist solely of conclusory allegations of illegality." United States v. Licavoli, 604 F.2d 613, 621 (9th Cir.1979), cert. denied, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980).
 
 
 7
 The position taken by John at the suppression hearing was certainly not so definite, specific, detailed, and nonconjectural as to enable the court to conclude that there were contested issues of fact going to the time of the arrest or the voluntariness of John's statements. The alleged evidentiary conflict is a mere chimera manufactured by John. Nothing in this record indicates that Henry did see and smell marijuana, and thus had probable cause, and as a result must have arrested John. The district court did not err.
 
 
 8
 John's argument for the necessity of conducting an evidentiary hearing to determine whether he was the subject of an illegal arrest resembles his previous contentions regarding the suppression of his statements, is governed by the same standard of review, and has no more merit. We find no error.
 
 
 9
 B. The Sufficiency of Factual Findings on The Motion to Suppress John's Statements to The Border Agents
 
 
 10
 Where the district court fails to make "essential" factual findings on the record sufficient to permit review of its denial of a suppression motion, this court must remand for additional factual findings. United States v. Prieto-Villa, 910 F.2d 601, 602 (9th Cir.1990); Fed.R.Crim.Proc. 12(3). "Essential factual findings are those which will permit appellate review of the legal questions involved." Prieto-Villa, at 610. However, very general findings are often sufficient. See United States v. Gomez, 846 F.2d 557, 560 (9th Cir.1988) (A finding that the search was consensual and that defendants legally consented to the search was sufficient). John asserts that the court erred by failing to make any specific findings regarding his statements prior to his being given Miranda[3] warnings. John is most concerned about his answer to agent Henry's question as to whether John owned the suitcases: "Yes, they're our suitcases. They're just our clothes." The record shows that the court found that the McCurdys were not yet in custody, but rather were subject to a routine customs investigation at the time of those statements.
 
 
 11
 The court stated: "I know from what I have seen in both [John McCurdy's] reports and the Government's reports that they were being detained as opposed to being--there is no evidence whatsoever that they were arrested until after the dog had been run over the car and the marijuana seized." Once the court stated the facts supporting the conclusion that the pre-arrest detention was reasonable, it was not required to make more specific findings regarding John's prior statements.
 
 C. Pamela's Severance Claim
 
 12
 A motion to sever must be made before trial and must be renewed at the close of evidence or it is waived. United States v. Guess, 745 F.2d 1286, 1289 (9th Cir.1984), cert. denied, 469 U.S. 1225, 105 S.Ct. 1219, 84 L.Ed.2d 360 (1985); Fed.R.Crim.Proc. 12(f). The record shows that the court denied Pamela's motion to sever as untimely: "Your motions were too late and even if I were not denying it, I would deny it on the merits." While it appears that Pamela's counsel attempted to renew her untimely motion at the close of the government's case (by stating "likewise," after John's counsel renewed his motion for acquittal and motion for severance), she has made no showing of cause for her failure to bring a timely motion under Federal Rule of Criminal Procedure 12(f). Accordingly, Pamela waived her right to raise the severance issue on appeal. See Guess, 745 F.2d at 1289 (issue waived where defendant failed to move for severance before or during trial).[4]
 
 
 13
 D. The Admissibility of The Marijuana Against Pamela
 
 
 14
 We recognize that while Federal Rule of Evidence 103(a) requires a waiver unless "a timely objection ... appears of record, stating the specific ground of the objection," it could be argued that a party need not interpose her own objections in all circumstances. See United States v. Hawkins, 905 F.2d 1489, 1493 n. 1 (11th Cir.1990) (underlying purpose of informing trial judge of possible errors so that he may have an opportunity to correct them is served where at least one of two or more defense counsel raises an objection), cert. denied, --- U.S. ----, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991).
 
 
 15
 On the other hand, a district judge should not have to guess at defense strategy. Perhaps one defendant wishes to make an issue of a point and the other does not. Pamela, for example, may not have wanted to carry on a meritless argument about chain of custody, but have been content to let the jury see that she did not care what it was. An example of that kind of strategic decision appears in this very appeal. John, who argued about chain of custody at trial, does not even bother with it on appeal. Moreover, different results may obtain for different defendants. On balance, a defendant who wishes to have evidence excluded should object regardless of the activities of codefendants, or reach an explicit understanding on the record that one objects for all. Absent that, the objection is waived.[5]
 
 
 16
 E. The Sufficiency of Evidence to Convict Pamela of Possession of Marijuana
 
 
 17
 There is sufficient evidence to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Pamela was convicted of aiding and abetting John in committing the drug offenses. To aid and abet, under 18 U.S.C. § 2 (1988), means "to assist the perpetrator of a crime." In order to aid and abet another to commit a crime, "it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seeks by his action to make it succeed.' " United States v. Reese, 775 F.2d 1066, 1072 (9th Cir.1985) (citations omitted). "The abettor's criminal intent may be inferred from the attendant facts and circumstances and need not be established by direct evidence." Id.
 
 
 18
 Pamela asserts that the only evidence supporting her conviction was her marital relationship with John, her proximity to the marijuana, and John's statements concerning the ownership of the car and the suitcases. However, the government presented more evidence than that. Trial testimony showed that when the first customs inspector asked John what they brought back from Mexico, Pamela answered that they had only brought some souvenirs and had only been in Mexico for the day. Pamela avoided agent Henry's attempts to have her return to the car in secondary inspection, and backed away from the car when Henry asked John to open a suitcase. When asked by Henry what they brought with them from Mexico, Pamela showed him a leather jacket and purse. She also stated that they went to Mexico "to kill time." Pamela failed to contradict John when he said that the suitcases were theirs and contained their clothes. Finally, when she was frisked in the security office, the agents found $1,100 in cash on her person.
 
 
 19
 Pamela's statements could reasonably be interpreted as an attempt to bluff the customs agents. Her continually distancing herself from the car was also arguably inconsistent with innocence. It tended to show guilty knowledge, nervousness, and was also distracting to the agent, as it was, perhaps, designed to be. Accordingly, viewing the government's evidence favorably, a jury could reasonably have found sufficient evidence to convict Pamela.
 
 F. The Jury Instructions
 
 20
 John's theory of the case was that the government failed to prove beyond a reasonable doubt that both defendants knew the marijuana was in the car, and that even if the government proved that one knew, it failed to prove which one. His proposed instruction was a prolix and confusing statement. Instead, the district court used two instructions that encompassed John's theory of the case, and did so in a manner far less likely to confuse the jury. Those informed the jury that it must consider the evidence as to each defendant separately to see if it demonstrated the guilt of that defendant, and must do the same regarding the different claims. Given those, the jury could not have found John guilty simply because it thought someone must be. Accordingly, the court did not err in rejecting the proposed instruction. United States v. Ibarra-Alcarez, 830 F.2d 968, 973 (9th Cir.1987) ("It is not error to refuse a proposed instruction if the other instructions, when viewed in their entirety, cover that theory.").
 
 
 21
 Pamela proposed an instruction that mere proximity to contraband does not establish possession. The court did not give that instruction, but did give one which adequately defined both actual and constructive possession. In addition, the court gave the following instruction: "Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond reasonable doubt that the defendant was a participant and not merely a knowing spectator." In so doing, it did not err.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 When cross-examined at trial, agent Henry testified that he did not begin to suspect that the McCurdy's were transporting drugs until John refused to open the suitcase. In contrast, before agent Palmer even opened the trunk, he had been told that drugs were suspected to be there, his dog had alerted on the trunk, and then when placed in the trunk, the dog immediately began scratching at the plastic bag
 
 
 [2]
 Interestingly, there is no suggestion that the first agent to look in the trunk--Tolentino--saw or smelled marijuana
 
 
 [3]
 Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966)
 
 
 [4]
 Were we to consider the merits, the result would not change, for John's coconspirator statements were admissible in any event. See Bourjaily v. United States, 483 U.S. 171, 183-84, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987)
 
 
 [5]
 At any rate, Pamela's contention that the chain of custody of the marijuana was not established is without merit. See United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991)