990 F.2d 1261
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Rafael ANGUIANO, Defendant-Appellant.
 No. 92-50190.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 5, 1993.
Decided March 30, 1993.
 
 Before WALLACE, Chief Judge, and SNEED and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Juan Rafael Anguiano ("Anguiano") timely appeals his jury conviction of conspiracy to possess and distribute cocaine under 21 U.S.C. § 846 and possession with intent to distribute cocaine under 21 U.S.C. § 841(a)(1). Anguiano maintains that the evidence at trial was insufficient to sustain his conviction on either count. We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 On August 6, 1991, Detective Clifford Morgan of the Boise, Idaho Police Department, acting under the name of Ian Scott, was introduced by telephone to Rafael Avila, a defendant in this action. Detective Morgan and Avila discussed the purchase of kilograms of cocaine by Morgan. In preparation for the deal, Avila was to send samples of the cocaine to Detective Morgan.
 
 
 4
 After the samples were sent, Detective Morgan flew to Los Angeles and met with Avila at the Mission Hills Post Office parking lot ("post office") regarding the multi-kilogram sale. After Morgan and Avila met, they walked to a pay phone where Avila dialed a phone number which Morgan repeated into a transmitter he was wearing. A short time later, the pay phone rang, and Avila spoke with the caller in Spanish. Avila told Morgan that "they" wanted him (Avila) to go over to "their" house to talk about the deal. Avila then drove to Anguiano's house and picked up Anguiano.
 
 
 5
 Avila and Anguiano returned to the post office. Avila got out of the pick-up truck and again met with detective Morgan. Avila stated "He just don't want to bring the five [kilograms of cocaine] but the way he want to do it is he gonna bring three." Morgan pointed to Anguiano, who was still seated in the pick-up truck and asked "Is that him?" Avila said "Yes, that's him."
 
 
 6
 Avila and Anguiano left the post office and drove to 12827 Woodcock Avenue in Sylmar, California ("the Woodcock residence"). They entered and remained inside for about 15-30 minutes. They left together and drove to Avila's house, also located in Sylmar, where Avila entered and Anguiano remained in the truck. Upon Avila's return to the truck, they drove to Anguiano's house and both went inside. Avila and Anguiano left Anguiano's home and returned to the Woodcock residence where both entered. About 45 minutes later, Avila left alone and drove back to Anguiano's home.
 
 
 7
 A short time later, defendants, Eduardo Perez and Ernesto Segura-Gallegos, arrived in a van and pulled into the driveway of Anguiano's home. Soon thereafter, Avila left Anguiano's residence carrying a brown paper bag. He looked towards the van, appeared to speak to Perez and Segura-Gallegos, and then entered the pick-up truck and drove to the post office with the van following closely behind.
 
 
 8
 No more than two hours had elapsed from the time Avila and Anguiano left Detective Morgan at the post office from the time Avila returned. Thus, while the record does not clearly indicate the distances between the Woodcock residence and the houses of Avila and Anguiano, it is reasonable to assume that they were not great in any case.
 
 
 9
 When Avila arrived at the post office, he told Detective Morgan that he had brought only one kilogram which he showed to Morgan. After seeing the cocaine, Morgan signaled other officers who arrested Avila, Perez, and Segura-Gallegos.
 
 
 10
 Soon after their arrests, Anguiano was arrested at the Woodcock residence. At the time of his arrest, Anguiano was holding a beeper at which he was looking as the police approached. Upon looking in the officers' direction, he dropped the beeper. It was retrieved by an officer who noticed it was activated and that "911" was reported across the digital readout. The officer then dialed the same number that Avila had dialed from the post office that day, and a few seconds later the beeper was activated. Later that day, a search of Anguiano's residence revealed two scales and a small amount of marijuana.
 
 
 11
 Anguiano was convicted of one count of conspiracy to posses with intent to distribute cocaine in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 97 months incarceration and 4 years supervised release.
 
 II.
 JURISDICTION AND STANDARD OF REVIEW
 
 12
 The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 13
 There is sufficient evidence to support a conviction if "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 III.
 DISCUSSION
 
 14
 Anguiano contends that the evidence at trial was insufficient to prove that he was a member of the conspiracy to sell cocaine to detective Morgan, and thus, his conviction of conspiracy to distribute cocaine and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 should be reversed. We disagree.
 
 
 15
 Once the existence of a conspiracy is shown,[1] evidence establishing beyond a reasonable doubt defendant's knowing connection with the conspiracy, even though the connection is slight, is sufficient to convict him of knowing participation in the conspiracy. United States v. Meyers, 847 F.2d 1408, 1413 (9th Cir.1988); United States v. Taylor, 802 F.2d 1108, 1116 (9th Cir.1986), cert. denied, 497 U.S. 1094 (1987). Although mere proximity to the scene of illegal activity is not enough in itself to establish involvement in the conspiracy, a defendant's presence may support that inference when viewed in the context of other evidence. United States v. Reese, 775 F.2d 1066, 1071-72 (9th Cir.1985). A member of a conspiracy is liable for any substantive offenses committed during his membership in the conspiracy. Pinkerton v. United States, 328 U.S. 640, 647 (1946); United States v. Lothian, 976 F.2d 1257, 1262 (9th Cir.1992).
 
 
 16
 We conclude that the evidence at trial was sufficient to prove that Anguiano had a knowing connection with the conspiracy to sell cocaine to Detective Morgan.
 
 
 17
 Anguiano was identified by Avila as the source of the cocaine. At the time of his arrest, Anguiano was holding the beeper that Avila had called earlier that day from a pay phone at the post office. Anguiano dropped the beeper when the officers approached. When the beeper was retrieved, an officer noted that "911" was reported across the digital readout. Moreover, after Avila completed the call from the pay phone, he told Morgan that "they" want him to go over to "their" house to talk about the deal. Avila then drove to Anguiano's home. Avila and Anguiano were seen regularly in each other's company on the day of the cocaine sale, particularly as the deal progressed. Finally, two scales and a small amount of marijuana were found at Anguiano's residence later that day.
 
 
 18
 A rational jury could have found based on this evidence that Anguiano was a knowing participant in the conspiracy to possess cocaine with intent to distribute. Accordingly, the evidence was sufficient to support Anguiano's conviction under 21 U.S.C. §§ 846 and 841(a)(1).
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Anguiano does not challenge the existence of the conspiracy