116 F.3d 1487
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eddie EDWARDS, Defendant-Appellant.
 No. 94-50446.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1996.
Decided June 23, 1997.
 
 Appeal from the United States District Court for the Central District of California, No. CR-90-00497-HLH; Harry L. Hupp, District Judge, Presiding.
 Before: FLETCHER, BEEZER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Edwards was convicted of possession, distribution, and conspiracy to distribute narcotics; money laundering; and assisting in the preparation of false currency transaction reports.
 
 
 3
 Edwards argues that the affidavit supporting the search warrant for 9208 Palm Street did not show probable cause to believe that drugs would be there, because he used many places as his residence in addition to the apartment at 9208 East Palm Street. There is a "reasonable nexus" to support a search "in the case of drug dealers ... where the dealers live." United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir.1993). Though Edwards lived in numerous places, the affidavit showed that he lived at 9208 East Palm among them, and subscribed to telephone service there. That he had other residences as well as the one at East Palm does not destroy the inference that he would probably have narcotics at that residence.
 
 
 4
 Edwards argues that there was insufficient evidence to connect him with the conspiracy to distribute narcotics he concedes existed among Patrick Johnson and others. Our circuit's precedent requires proof of the existence of a conspiracy and then need prove only a slight connection between the defendant and the conspiracy. Circumstantial evidence and permissible inferences therefrom can suffice as proof. United States v. Foster, 57 F.3d 727, 729 (9th Cir.1995); United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987). Edwards rented a luxury apartment with Johnson. He bought a house with $20,000 which he said was a gift from Johnson. He used as his real estate agent the person the Johnson conspiracy was using to launder its funds. He used multiple false names and identifications. He was arrested with two pagers and three cellular telephones. In an intercepted telephone conversation between Edwards and Johnson, Edwards passed on a co-conspirator's complaint that Johnson had departed without giving the co-conspirator a key so that he could obtain the conspiracy's crack. A loaded, fully automatic machine gun was in Edwards's bedroom at 9208 East Palm. He spent hundreds of thousands of dollars in cash and cashier's checks in a short time, though reporting no taxable income. Upon learning that arrest was likely, Edwards fled to Texas, where he bought yet another house under yet another false name. The evidence of Edwards's criminal conduct of the same sort as the conspirators' conduct and of his coordination of his conduct with theirs sufficed to permit reasonable jurors to conclude that he was a member of the conspiracy.
 
 
 5
 Edwards argues that there was insufficient evidence for the money laundering counts under 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i). He makes two arguments: that he was not part of the Patrick Johnson conspiracy, and that there was no evidence that the $50,190 used to buy 10936 Oak Run Circle were proceeds of an unlawful activity. We explained above our rejection of the sufficiency argument directed toward Edwards's participation in the conspiracy. As for the proceeds argument, considerable evidence supported the inference that Edwards knew the money was dirty. Edwards used Lula Hobbs, the conspiracy's real estate agent. The $50,190 was paid with cashiers checks, most of which were purchased with cash, and each in an amount less than $10,000. Five of the checks were purchased the same day by different people. Edwards and Johnson gave the bank a form which they both signed. The form falsely stated that Johnson was Edwards's brother and that he had given him $20,000 dollars of the money as a gift. Another form falsely stated that another "donor" was Edwards's "aunt." The jury could reasonably conclude that Edwards had no means of obtaining the $50,000 except narcotics. He used a broker who specialized in dirty money transactions for the Patrick Johnson conspiracy. He falsified extensively regarding the source of the money. These facts permit the inference that Edwards knew that the money was proceeds of an unlawful activity. United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991).
 
 
 6
 Edwards' argument that there was insufficient evidence to support the distribution counts fails, as it rests entirely on the failed argument that he was not connected to the Patrick Johnson conspiracy. We have explained our rejection of that proposition above.
 
 
 7
 Edwards argues that there was insufficient evidence to show possession of the 821.5 grams of crack in the garage at 9208 Palm Street and this 36.5 grams of crack in the trunk of the car at 17800 East Colima Street. He is right that discovery of the contraband at an apartment jointly occupied by himself and others, without more, would not suffice. United States v. Reese, 775 F.2d 1066, 1073 (9th Cir.1985). Without more, the crack might as easily have been someone else's. But there was more.
 
 
 8
 The jury could conclude that only Edwards had a key for the locker in the garage of the Palm Street apartment, and only Edwards and Ms. Grim used the master bedroom and were lessees. Drug selling paraphernalia was found in the master bedroom with Edwards's personal correspondence Edwards had vast unexplained wealth. Edwards's flight suggested a consciousness of guilt. As for the crack in the trunk of the car, even though the car was registered to somebody else, Edwards rented the garage where it was parked. A money counter also in the trunk was identical to one at Edwards's East Palm apartment. From all that as well as the other evidence before them, the jury could infer that the crack in the locker and the crack in the trunk of the car was Edwards's.
 
 
 9
 Edwards argues that there was insufficient evidence to support his convictions for assisting the preparation of false currency transaction reports ("CTRs") under 26 U.S.C. § 7206(2). We disagree. Reasonable jurors could have concluded beyond a reasonable doubt that Edwards acted willfully to cause the filing of false currency transaction reports. Edwards argues that the sellers filled out the false currency transaction reports. He maintains all he did was fill out credit applications. He contends that no evidence to show that he intended to cause creation of false CTRs. Were the evidence before the jury limited to the car purchases, that argument would have force. Edwards's use of false names to buy the Ford pickup for $23,000 and the Cadillac for $21,000, without more, might well be insufficient. The false Social Security numbers are suggestive of some consciousness on the part of Edwards that the sellers necessarily would be filing CTRs, but we need not consider whether false Social Security numbers and false names would suffice.
 
 
 10
 There was much more evidence of willfully assisting in the preparation of false CTRs. The cashier's checks Edwards used to buy a Chevrolet for $25,000 were purchased under different names or from different banks. That would ordinarily be a nuisance for the purchaser; thus the willingness to go to so much trouble would be well explained by a desire to avoid currency transaction reports. Edwards's $50,000 purchase of real estate through the conspiracy's broker, discussed above, with multiple cashier's checks, each under $10,000 and several purchased the same day for different people, shows a sophisticated understanding of currency transaction reporting requirements and the criminal means which could be used to evade them. The jurors could consider the evidence on the cars in light of what they had learned about the real estate purchases and reasonably infer that Edwards knew a great deal about currency transaction reports and went to a great deal of trouble to avoid being the subject of them. In light of the evidence on the real estate transactions as well as the car transactions, the jurors could conclude that when Johnson gave the false information when he bought the cars, his purpose was to cause false CTRs to be filed. See United States v. Crooks, 804 F.2d 1441, 1448 (9th Cir.1986), modified on other grounds, 826 F.2d 4 (9th Cir.1987).
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3