**Duncan Peder McKENZIE, Jr., Petitioner–Appellant,**

v.

**Jack McCORMICK, Warden, Montana State Prison, Respondent–Appellee.**

**No. 93–35142.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 1, 1994.

Decided June 24, 1994.

---

Timothy K. Ford, MacDonald, Hoague & Bayless, Seattle, WA, Gregory A. Jackson, Jackson & Rice, Helena, MT, for petitioner-appellant.

Paul D. Johnson, Asst. Atty. Gen., Helena, MT, Stephanie Ross, Point Roberts, WA, Jayne Mitchell, Pondera County Atty., Conrad, MT, for respondent-appellee.

Before: NORRIS, BEEZER and KOZINSKI, Circuit Judges.

Opinion by Judge KOZINSKI.

KOZINSKI, Circuit Judge.

Nearly 20 years after he was sentenced to death for the brutal murder of Lana Harding, Duncan Peder McKenzie, Jr., appeals the denial of his second federal habeas petition, claiming that a meeting between the special prosecutor and the sentencing judge denied him due process of law.

## I. Background

While litigating his first federal habeas petition,[1] McKenzie discovered that Special Prosecutor Douglas Anderson had met with Judge Nelson, who presided over McKenzie's trial, for 45 minutes on February 7, 1975—a week after the guilty verdict and a month before sentencing. Asserting that this meeting violated his right to due process at sentencing under *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), McKenzie apparently exhausted his state remedies[2] and filed his second federal habeas petition.[3] The district court, Judge Battin presiding, held an evidentiary hearing where Anderson testified he met with Judge Nelson to discuss payment for his services as special prosecutor.[4] Judge Battin granted summary judgment to the State[5] and denied McKenzie's petition because McKenzie "presented no evidence that sentencing was discussed" or that the meeting "involved and affected the sentencing decision." Memorandum and Order of 3/3/87, CR 24 at 3–4.

On appeal, it was discovered that the reporter's notes of Anderson's examination were lost and, three and a half years later, Judge Battin reconstructed the record pursu-

1. We affirmed the denial of this petition in *McKenzie v. Risley*, 842 F.2d 1525 (9th Cir.1988) (en banc). For a more complete recitation of the factual and procedural history of this case, *see id.* at 1526–29.

2. The record is unclear as to whether McKenzie fully and fairly presented this issue to the state courts. Nonetheless, our earlier ruling in this case is premised on a determination that there was exhaustion, and that ruling is the law of the case for purposes of this appeal. *See McKenzie v. Risley*, 915 F.2d 1396, 1397 (9th Cir.1990) (asserting that Montana Supreme Court denied second petition); Petition for Writ of Habeas Corpus, ER 3 ¶ 11 (same).

3. The State stipulated it would not argue that the second petition was an abuse of the writ under *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Findings of Fact, Conclusions of Law & Order of 11/23/92, ER 92 n. 2 ("Order of 11/23/92").

4. Judge Nelson was unavailable as a witness because of a debilitating injury and, like Anderson, has since died.

5. Though Judge Battin describes his order as one for summary judgment, he in fact conducted an evidentiary hearing, calling Anderson as a live witness and making findings of fact. Memorandum and Order of 3/3/87, CR 24; Order Certifying Record, ER 20.

ant to Fed.R.App.P. 10(c). According to Judge Battin's recollection, Anderson flatly denied discussing "anything that would have a bearing on the sentencing of McKenzie" during direct examination, Order Certifying Record, ER 20, but admitted during cross-examination that his discussion "may have included" certain aspects of the case, as they related to work Anderson had performed, *id.*, ER 22.[6]

We reversed and remanded, holding that Anderson's reconstructed testimony raised a genuine issue of material fact precluding summary judgment and that the proper inquiry was "whether matters were discussed that did or could have influenced the judge in his sentencing decision." *McKenzie v. Risley,* 915 F.2d 1396, 1398 (9th Cir.1990). The case was remanded to the District of Montana where Judge Battin recused himself from further proceedings and Chief Judge Hatfield assigned the case to Judge Lovell, who allowed additional discovery and scheduled an evidentiary hearing. Two days before the hearing, however, petitioner challenged Judge Lovell's impartiality on the ground that Judge Lovell had practiced law in Montana and may have had personal knowledge of the characters and reputations of Anderson and Judge Nelson. Judge Lovell recused himself, and there being no other judge available in the District of Montana, the case was reassigned to Judge Ryan of the District of Idaho.

Based on the evidence presented to him and a review of the record, Judge Ryan found that McKenzie had presented "no

credible proof that there were any matters or issues or subject matter discussed by Mr. Douglas Anderson and Judge Robert J. Nelson during their ex parte conversation on February 7, 1975, which did or could have influenced Judge Robert J. Nelson in his sentencing decision." Order of 11/23/92, ER 106.

McKenzie appeals this ruling, arguing that the district court erred in allocating the burden of proof and making various evidentiary rulings.

## II. Burden of Proof

 On habeas review, state court judgments of conviction and sentence carry a presumption of finality and legality, *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993), and may be set aside only when a state prisoner carries his burden of "proving that [his] detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770 (1963), *overruled on other grounds, Keeney v. Tamayo–Reyes,* —— U.S. ——, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992); *Miller v. Stagner,* 757 F.2d 988, 992 (9th Cir.), *amended,* 768 F.2d 1090 (9th Cir.1985); *Bashor v. Risley,* 730 F.2d 1228, 1232 (9th Cir.1984); *see Kealohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir.1986) ("burden is on the petitioner ... to establish certain defects to overcome [the] presumption [of correctness]"). Petitioner must also convince

---

**6.** Paragraph 7 of the Order Certifying Record states,

> Also on cross examination, Mr. Anderson was asked specifically whether he discussed with Judge Nelson a number of particular matters relating to the case and the work he had done on it. These included the evidence that Lana Harding was raped, the evidence that the victim was tortured, Mr. McKenzie's psychiatric defenses, the change of venue and the sentiment of the local community about the case, the brutality of the murder and discussions he had had with witnesses who had viewed the scene, among other subjects. Mr. Anderson testified that, although he did not specifically recall, his discussions with the Judge may have included some of these subjects, although they were not discussed with reference to sentencing.

ER 22.

Anderson disputed the accuracy of this reconstruction:

> This reconstruction is totally incorrect....
>
> ....
>
> I totally disagree with that. I never said anything like that and this reconstruction, which I had no part in, I mean, it was reconstructed by the Judge and, apparently, a former law clerk, and maybe somebody from the Attorney General's Office, I wasn't there, I don't know. That is totally incorrect.... I never said that my discussion with [Judge Nelson] may have included some of these subjects. They were never even discussed with [Judge Nelson].

Anderson Dep., CR 213 at 106–08; *see also id.* at 126–27 (specifically denying discussion of each issue raised in paragraph 7).

the district court "by a preponderance of evidence" of the facts underlying the alleged constitutional error. *Johnson v. Zerbst,* 304 U.S. 458, 469, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938); *Bellew v. Gunn,* 532 F.2d 1288, 1290 (9th Cir.1976).

■ Relying on *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), McKenzie argues that a showing that there was an off-the-record contact between the prosecutor and the sentencing judge is sufficient to shift the burden to the State to prove that matters relevant to sentencing were *not* discussed and that the meeting did *not* affect his sentence. *Gardner* does not support this novel rule, and the principles of federalism, comity and finality undergirding federal habeas jurisdiction counsel against it.

In *Gardner,* after the jury retired to deliberate as to sentencing in a death case, the state trial judge announced he would order a pre-sentence investigation report. Although the jury found that mitigating circumstances outweighed aggravating circumstances and returned an advisory sentence of life imprisonment, the trial judge sentenced Gardner to death, basing his decision in part on "the factual information contained in said pre-sentence investigation." *Id.* at 353, 97 S.Ct. at 1202 (quotations omitted). Portions of that report were never disclosed to defense counsel. Not surprisingly, the Supreme Court concluded that "petitioner was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain." *Id.* at 362, 97 S.Ct. at 1207.

Gardner's case thus differs from McKenzie's in a crucial respect: In *Gardner,* no one disputed that the information the sentencing judge read in the pre-sentence report was highly relevant to sentencing; that, after all, was the purpose of the report. Nor was there any doubt the judge relied on this information in making his sentencing decision. Both facts—which lie at the heart of the constitutional error in *Gardner*—were taken for granted.

■ But what was assumed in *Gardner* is hotly contested in *McKenzie;* it's the very question we ordered answered on remand: "[W]ere [matters] discussed that did or could have influenced the judge in his sentencing decision"? 915 F.2d at 1398. Judge Ryan answered with an unequivocal "no" after considering Judge Battin's reconstruction of Anderson's testimony, numerous affidavits and depositions, and the testimony of many witnesses. Order of 11/23/92, ER 99–106. His finding, grounded in a thorough review of the record, is not clearly erroneous. *See Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988); *Wardley Int'l Bank, Inc. v. Nasipit Bay Vessel,* 841 F.2d 259, 261 n. 1 (9th Cir.1988) (clear error standard applies as well when findings are based on documentary evidence or inference). Indeed, Judge Ryan's finding that there was no evidence of anything "which did or could have influenced Judge Robert J. Nelson in his sentencing decision," Order of 11/23/92, ER 106, is perfectly consistent with Judge Battin's earlier finding that there was no evidence supporting the allegation that the meeting "involved and affected the sentencing decision," Memorandum and Order of 3/3/87, CR 24 at 4. *See* n. 5 *supra.* Because, as two district judges have now found, no information relevant to sentencing was communicated during the course of the meeting, Judge Nelson obviously couldn't have relied on it. Thus, unlike Gardner, McKenzie never made a threshold showing of constitutional error, and the burden to prove the harmlessness of that error never shifted to the State.

■ We understand McKenzie to be making the somewhat related argument that the burden of stating a constitutional violation did not initially rest with him because the fact of contact between the prosecutor and the trial judge raised a presumption of prejudice. Again, this might be an appropriate rule where there's been ex parte contact, *i.e.,* where the prosecutor was acting as an advocate for the government. But it has no place where there's been a finding of fact that the prosecutor was simply inquiring into his fees and nothing pertaining to the substance of

the case was discussed.[7]

■ Proof that there was a contact between the judge and the prosecutor does not satisfy petitioner's burden nor does it overcome the presumption of constitutional correctness accorded final state judgments of conviction and sentence; only proof of an *improper* contact does. Because McKenzie failed to present *that* proof, Judge Ryan correctly left the burden of proof on McKenzie, and his finding that McKenzie had not satisfied it was not clearly erroneous.[8]

## III. Evidentiary Rulings

McKenzie also alleges that Judge Lovell and Judge Ryan made erroneous evidentiary rulings. We review for abuse of discretion. *Morgan v. Woessner,* 997 F.2d 1244, 1260 (9th Cir.1993).

### A. Work Product

McKenzie first alleges Judge Lovell erred in granting a protective order covering four documents prepared by the State's counsel in anticipation of litigation. Three of the documents were Assistant Attorneys General's notes of interviews with Anderson. The other was a memorandum raising questions about the case, which was shown to Anderson in preparation for his deposition.

■ Judge Lovell correctly ruled that the interview notes were protected work product under *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and Fed. R.Civ.P. 26(b). In *Hickman,* the Court recognized that "forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness." 329 U.S. at 512–13, 67 S.Ct. at 394–95; *see Upjohn Co. v. United States,* 449 U.S. 383, 399, 101 S.Ct. 677, 687, 66 L.Ed.2d 584 (1981) ("Forcing an attorney to disclose notes and memoranda of witnesses' oral statements is particularly disfavored because it tends to reveal the attorney's mental processes....").

McKenzie failed to make a showing of "substantial need" and "undue hardship," much less the "far greater showing of necessity and unavailability by other means" required for "opinion" work product. *Upjohn,* 449 U.S. at 401–02, 101 S.Ct. at 688–89. The two Assistant Attorneys General were not only available, but were deposed by McKenzie. Moreover, Judge Lovell, reviewing the documents in camera, found them of no impeachment value, as they did not contradict the information provided by Anderson at his deposition or in his affidavits. We have also reviewed these documents and conclude that Judge Lovell did not abuse his discretion in granting the protective order for the interview notes.

The memorandum presents a closer question. McKenzie argues that the State waived its qualified privilege by showing it to Anderson before his deposition. *See United States v. Nobles,* 422 U.S. 225, 239–41, 95 S.Ct. 2160, 2170–72, 45 L.Ed.2d 141 (1975) (by calling private investigator as witness, respondent waived the work product privilege with respect to portions of investigator's report covered by his testimony). Even if the use of this document to prepare Anderson rendered it discoverable, however, *see James Julian, Inc. v. Raytheon Co.,* 93 F.R.D. 138, 144–46 (D.Del.1982), the district court was entitled to exercise its discretion in deciding whether discovery was "necessary

7. McKenzie also points to three cases where we ordered defendants resentenced because of contact between a district judge and prosecutor or case agent at the time of the original sentencing. *See United States v. Reese,* 775 F.2d 1066 (9th Cir.1985); *United States v. Alverson,* 666 F.2d 341 (9th Cir.1982); *United States v. Wolfson,* 634 F.2d 1217 (9th Cir.1980). These cases came to us on direct appeal, and none involved a due process claim. Moreover, these cases all involved true ex parte meetings: The prosecutor/case agent was acting in his capacity as an advocate for the government's position and—as in *Gardner*—conveying information pertinent to sentencing. *See Reese,* 775 F.2d at 1076–78; *Alverson,* 666 F.2d at 348–49; *Wolfson,* 634 F.2d at 1221–22.

8. Because the burden has not shifted to the State to prove harmless error, we have no occasion to decide whether the Supreme Court's recent pronouncement that the petitioner bears the burden of proving "substantial and injurious effect or influence" on collateral review of trial-type error carries over to the context of this case. *See Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1718–22, 123 L.Ed.2d 353 (1993).

in the interests of justice." Fed.R.Evid. 612. Judge Lovell viewed the memorandum in camera and found that it "does not suggest answers" and that withholding it "is not inconsistent with the purpose of the work product privilege." Order of 3/6/92, ER 24–25. Our independent review of the memorandum leads us to conclude Judge Lovell did not abuse his discretion in protecting that document from discovery.

## B. Character and Habit Evidence

McKenzie next objects to the admission of testimony that Judge Nelson often told time-consuming anecdotes and that the judge and Douglas Anderson were of good moral character and would not engage in an ex parte discussion regarding an ongoing case. The district court admitted the story-telling testimony as evidence of habit under Fed.R.Evid. 406, and admitted the character evidence under Fed.R.Evid. 404(a), reasoning that McKenzie had placed Judge Nelson and Mr. Anderson's "character for ethical conduct and professional integrity ... squarely at issue." Opinion and Order of 7/13/92, CR 168 at 4.

█ We need not address the somewhat close question whether the district court's rationale supports its ruling because most of the evidence was admissible under Fed. R.Evid. 404(b). *See United States v. Blake,* 941 F.2d 334, 339 (5th Cir.1991) (admissibility of evidence originally characterized as character evidence upheld under alternative basis in Rule 404(b)). Evidence that Judge Nelson would not engage in ex parte contact with attorneys regarding an ongoing case and that he regularly told time-consuming stories to attorneys was admissible to prove that Anderson had no opportunity to discuss sentencing-related matters with the judge during the 20 minutes or so not otherwise accounted for in the meeting.[9] Under Fed. R.Evid. 404(a)(3) and 608(a), evidence of Anderson's character for truthfulness was admissible after McKenzie attacked it. *See* RT 11/5/92 at 53–61, 223–24, 334–36, 338–39.

█ The single instance of testimony regarding Anderson's propensity to engage in ex parte contact came from a state court judge, who, when asked "whether Doug Anderson was the kind of lawyer who engaged in ex parte tactics, to get contested matters resolved in his favor," answered, "Not to that extent, no." *Id.* at 232. Even if admission of this evidence—ambivalent as it is—was error, it was obviously harmless. In a bench trial such as this, if admissible evidence is sufficient to sustain the findings, we will not reverse because improper evidence was also admitted. *United States v. Hudson,* 479 F.2d 251, 255 (9th Cir.1972). Judge Ryan made his findings of fact and conclusions on law "after fully considering the record before the court—the excerpts from the record cited by counsel, the submitted documentary evidence, all submitted depositions, all submitted or cited affidavits, together with the testimony of all witnesses testifying before the court at the evidentiary hearing, and further, having considered all documents and record excerpts submitted by counsel." Order of 11/23/92, ER 106. If this lone answer made any contribution at all to Judge Ryan's findings, it was marginal, and its admission does not constitute reversible error. *See United States v. Diaz,* 961 F.2d 1417, 1420 (9th Cir.1992); Fed.R.Civ.P. 61.

## C. Plea Agreement

█ McKenzie argues that Judge Ryan erred by excluding additional testimony about Judge Nelson's pretrial willingness to impose a prison sentence as part of a plea bargain. He contends that Judge Nelson's initial willingness to impose a prison sentence, the prosecution's refusal to make a recommendation at the sentencing hearing and Judge Nelson's eventual imposition of the death penalty provide strong support for his theory that Anderson must have lobbied Judge Nelson about the sentence.

We find no abuse of discretion in Judge Ryan's refusal to admit additional testimony about the pretrial negotiations, both because Judge Ryan did consider these facts, Order

---

9. At his deposition, Anderson testified that the 45-minute meeting consisted of 20 minutes waiting in Judge Nelson's reception area, 5 minutes discussing fees and 20 minutes listening to the Judge's anecdotes. Anderson Dep., CR 213 at 88–95.

of 11/23/92, ER 105–06, and because Judge Nelson's willingness to impose a prison sentence as part of a plea agreement was of minimal relevance once the plea negotiations failed.

**AFFIRMED.**

NORRIS, Circuit Judge, dissenting:

In *Gardner v. Florida*, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Supreme Court held that it was a denial of due process for a trial judge to impose the death penalty on the basis of information which was not disclosed, and which the defendant was given no opportunity to deny or explain. In his habeas petition, McKenzie claims that the pre-sentencing *ex parte* discussion between the special prosecutor and the sentencing judge violated his due process rights under *Gardner*.

Judge Ryan rejected McKenzie's *Gardner* claim on the ground that McKenzie had failed to carry his burden of proving by a preponderance of the evidence that matters were discussed that did or could have influenced the judge's sentencing decision. Order of 11/23/92, ER 106–07; *see McKenzie v. Risley*, 915 F.2d 1396, 1398 (9th Cir.1990). On appeal McKenzie contends that Judge Ryan erred as a matter of law in placing the burden of proof on him. He argues that once he made a threshold showing that the prosecutor and the judge had a pre-sentencing meeting concerning his case, the burden shifted to the state to prove that the *ex parte* contact was harmless. He reads *Gardner* as treating "the sentencing Judge in a capital sentencing proceeding much like a juror," and argues that *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), establishes that "undisclosed *ex parte* communications with trial jurors are constitutionally prejudicial, unless shown to be harmless beyond a reasonable doubt." Appellant's Opening Br. at 44. Thus reasoning by analogy, he argues that the same "presumptively prejudicial" standard the Supreme Court applied to juror contacts in *Remmer* should be applied to *ex parte* contacts with sentencing judges in capital cases. *See Remmer*, 347 U.S. at 229, 74 S.Ct. at 451 ("In a criminal case, *any* private communica-

tion, contact, or tampering, directly or indirectly, with a juror during a trial *about the matter pending* before the jury is, for obvious reasons, deemed *presumptively prejudicial*.... The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.") (emphasis added); *see also United States v. Myers*, 626 F.2d 365, 366 (4th Cir. 1980).

I am persuaded by McKenzie's argument that the *Remmer* "presumptively prejudicial" standard logically should apply to pre-sentencing contacts with sentencing judges in capital cases as well as to juror contacts in criminal cases generally. *Gardner*'s strict prohibition against undisclosed communications to sentencing judges in death cases is predicated on the reality that "death is a different kind of punishment from any other which may be imposed in this country." 430 U.S. at 357, 97 S.Ct. at 1204. Accordingly, "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice and emotion." *Id.* at 358, 97 S.Ct. at 1204.

The application of the *Remmer* standard in *Gardner*-type cases satisfies this vitally important purpose. In allocating the burden of proof, we must look to the interests of both the state and the defendant. *Mullaney v. Wilbur*, 421 U.S. 684, 699, 95 S.Ct. 1881, 1889–90, 44 L.Ed.2d 508 (1975) (mandating "an analysis that looks to the ... interests of both the State and the defendant as affected by the allocation of the burden of proof"). The state's interest at stake is in avoiding a resentencing proceeding; the defendant's interest is in avoiding execution without due process. Shifting the burden to the state when the defendant makes a threshold showing that his case was the subject of an *ex parte* discussion between the prosecutor and the sentencing judge strikes a reasonable balance between these competing interests.

This case illustrates how onerous it can be for the defendant to carry the burden of proving what was said years earlier at a meeting between a prosecutor and a sentenc-

ing judge. McKenzie did not learn about the meeting until well after he was sentenced to death. By the time the first hearing was held, 10 years after the meeting took place, there was precious little evidence available about what was said at the meeting. The conversation was off the record, the judge was unavailable as a witness because of illness (and later death), and the prosecutor had great difficulty remembering what was said other than that the purpose of the meeting was to discuss his fee for prosecuting McKenzie. To top matters off, the prosecutor died prior to the second hearing before Judge Ryan. The only hard evidence is the prosecutor's personal diary in which he logged 45 minutes for a meeting with the judge about McKenzie's case, without any more specific indication of the purpose of the meeting or what was discussed.

I believe that McKenzie has met his burden of showing, as a threshold matter, that the sentencing judge and the prosecutor discussed the "matter pending" during their pre-sentencing *ex parte* meeting. In addition to the undisputed evidence that the prosecutor logged 45 minutes for the meeting in his personal diary, it is also undisputed that the subject of this *ex parte* meeting was McKenzie's case. To be sure, the specific purpose of the meeting was to discuss the prosecutor's bill, but it certainly would not be surprising for an attorney to talk about the case when presenting his request for fees. And, in fact, the prosecutor here "conceded that his discussions with the judge 'may have included' conversation about the brutality of the murder, evidence that the victim was raped, McKenzie's psychiatric defenses, as well as other matters directly related to the merits of the case. *See* Order Certifying Record at 4." *McKenzie*, 915 F.2d at 1398. While this evidence is plainly insufficient to prove by a preponderance that they discussed matters that "did or could have influenced the judge in his sentencing decision," *id.*, it should be sufficient to make a threshold showing that the *ex parte* communication involved "the matter pending," *Remmer*, 347 U.S. at 229, 74 S.Ct. at 451, and to shift to the state the burden of showing that the communication was harmless. *See id.*

Shifting the burden to the state once McKenzie has made this threshold showing would not unfairly burden the state because the state bears the responsibility for making the *ex parte* contact in the first instance, and was in a superior position to make a record that the discussion did not involve issues that might influence the judge in sentencing. Indeed, the application of the *Remmer* standard to a prosecutor's *ex parte* contact with a sentencing judge about the case would serve as a reasonable inducement to prosecutors to make written records of such constitutionally sensitive contacts.

For its part, the majority is unresponsive to McKenzie's argument that the *Remmer* standard should be applied to *Gardner*-type cases when a prosecutor makes a presentencing *ex parte* contact with the sentencing judge. Indeed, the majority opinion fails to even mention *Remmer*. The basis for the majority's rejection of McKenzie's *Gardner* claim is a tortuous chain of reasoning. My colleagues say that *Gardner* offers McKenzie no support for his argument that the burden of proof was misallocated by the district court. *See* Majority Opinion at 1419. True enough, but what the majority fails to recognize is that nothing in *Gardner* precludes McKenzie's burden-shifting argument either. As the majority itself notes, it was undisputed in *Gardner* that the sentencing judge read and relied upon facts relevant to sentencing that Gardner had no opportunity to deny or respond. *See id.* at 1419. As a result, the *Gardner* Court had no reason to address the question whether the *Remmer* standard should apply in *Gardner*-type cases. Here, in contrast, the facts of the meeting are "hotly contested." Majority Opinion at 1419.

The majority effectively sidesteps McKenzie's *Remmer* argument by accepting as not clearly erroneous Judge Ryan's finding of fact that "no information relevant to sentencing was communicated during the course of the meeting." Majority Opinion at 1419. This is classic bootstrap reasoning. The issue is not whether Judge Ryan's finding was clearly erroneous as the majority holds. Rather, the issue is whether Judge Ryan committed legal error in predicating his finding on McKenzie's failure to prove, "by a

preponderance of the evidence, that [the prosecutor] and [the judge] ... discussed any matters that 'did or could have influenced the judge in his sentencing decision.'" Order of 11/23/92, ER 107 (quoting *McKenzie*, 915 F.2d at 1398).

In sum, the majority rejects McKenzie's appeal on the basis of a finding of fact that McKenzie claims is fatally defective because it is the product of the very legal error that lies at the heart of his appeal. In disposing of the appeal on the strength of this circular logic, the majority fails to come to grips with the merits of McKenzie's legal argument that Judge Ryan erred in finding that McKenzie did not prove by a preponderance of the evidence that anything was said at the meeting that could have been prejudicial. In other words, the majority never decides whether the *Remmer* "presumptively prejudicial" standard applies to *ex parte* contacts between the prosecutor and the sentencing judge in death cases, thereby leaving untouched McKenzie's appellate claim that Judge Ryan committed legal error in failing to shift to the state the burden of proving that the *ex parte* meeting between judge and prosecutor was harmless. Thus, the majority rejects McKenzie's appeal by relying on a finding of fact that would be fatally defective if McKenzie were to prevail on his *Remmer* argument—the argument that the majority fails to decide.[1]

I dissent.

---

**1.** As if to highlight the defects in their reasoning, my colleagues stress that not one, but two judges found that because "no information relevant to sentencing was communicated during the course of the meeting, [the judge] couldn't have relied on it." *See* Majority Opinion at 1419. In making this argument, they cite Judge Battin's findings in the original hearing, findings that we set aside because Judge Battin applied the wrong legal standard. *See McKenzie*, 915 F.2d at 1398.