David F. SIMMONS, Petitioner,

v.

James BLODGETT, Superintendent, Respondent.

No. C90–1751Z.

United States District Court,
W.D. Washington,
Northern Division.

Jan. 10, 1996.

Jonathan Stuart Solovy, Bell, O'Connor, Flegenheimer & Leong, Seattle WA, for Petitioner.

Paul Douglas Weisser, Thomas J. Young, Attorney General's Office, Corrections Division, Olympia WA, for Respondent.

## ORDER

ZILLY, District Judge.

This is an extraordinary case. The petitioner has been imprisoned for more than eleven years based on a conviction that may well have been constitutionally deficient. His sole claim for habeas relief[1] rests on the admission by one juror, made eight years after trial, that prior to and during the trial she read numerous newspaper articles about the case, some of which contained prejudicial information that had been excluded from evidence. The problem is that this particular juror suffers from mild to moderate senile dementia, has impaired cognitive function as a result of brain surgery performed after the trial, is vulnerable to suggestion, and has given conflicting testimony under oath about whether she read the newspaper articles during trial. Because of the juror's condition, no one may ever know for certain whether she read the newspaper articles in question at the time they were printed. The only certainty in this case is that some of the information in those articles was extremely prejudicial and, therefore, if she did in fact read the articles, the petitioner would be entitled to habeas relief.

The state court found, after a full and fair hearing on the issue, that petitioner failed to establish by a preponderance of the evidence that the juror read the newspaper articles during trial. Because this Court is bound by the state court's findings of fact and must presume them to be correct, this Court cannot find that constitutional error occurred and cannot grant habeas relief.

## I. *Background*

More than eleven years ago, on October 19, 1984, petitioner was convicted of two counts of aggravated murder in the first degree and one count of conspiracy to commit murder. During jury deliberations, while the jurors were discussing the possible motive for the crime, one of the jurors, Iris Leverington, commented, "[w]ell, that's not the way it was in the newspaper." The jury foreman immediately sent the trial judge a note stating that "[o]ne of the jurors read a newspaper." Before the judge could respond to the note, however, the jury reached a verdict. After the verdict, the trial judge questioned the jury foreman and Ms. Leverington. Leverington admitted she read one

---

1. Although petitioner has cited numerous grounds for relief, all of his claims are based on juror Leverington's misconduct. Petitioner previously filed a motion to amend his petition to add additional grounds for relief, docket no. 70, which this Court granted in part and denied in part. See Minute Order, docket no. 88. This Order deals with the remaining grounds for relief, Grounds 1, 3, 4, and 5 as modified by the Court's Minute Order.

newspaper article, which contained photographs of the lawyers and some biographical information. She also stated that the article reported that defendant Simmons and his co-defendant Dailey had "raided a marijuana farm or something." The newspaper article that Leverington admitted to reading, however, contained no information about a marijuana farm. The trial judge, noting that evidence of the marijuana drug operation was admitted at trial, concluded that Ms. Leverington confused what she read in the newspaper with what she had heard at trial, and denied the defendants' motion for a new trial.

In his *pro se* state court appeals and initial habeas petition to this Court, petitioner alleged jury misconduct based on Leverington's conduct. In each case, the petitioner was denied relief. On appeal from denial of his initial habeas petition, the Ninth Circuit Court of Appeals appointed counsel for Mr. Simmons, who then hired a private investigator. In September 1992, the private investigator interviewed Ms. Leverington at her home. Ms. Leverington had had brain surgery since the trial and was somewhat impaired, but appeared competent to the investigator. Leverington told the investigator that prior to and during the trial she had read numerous *Everett Herald* articles about the case, and used them during the trial to clarify the testimony she heard in the courtroom. Astonishingly, Leverington also told the investigator that she had cut out and saved all of the articles about the trial. Leverington then gave the investigator the twenty articles she had saved, and signed an affidavit attesting to what she had told the investigator.

Armed with this new evidence, petitioner moved to enlarge the record to supplement his jury misconduct claim with the affidavit, investigator's report, and newspaper articles saved by the juror. On March 12, 1993, the Ninth Circuit remanded this case to this Court to consider petitioner's motion to enlarge the record. The Ninth Circuit also directed this Court to "consider whether state court remedies have been exhausted,

and, if not, what further action if any should be taken as a result thereof."

By Minute Order entered September 15, 1993, docket no. 53, the Court granted the petitioner's motion to enlarge the record and scheduled oral argument on the issue of whether Simmons's state court remedies as to his juror misconduct claim had been exhausted. After hearing argument, the Court ruled that the newly discovered evidence presented by Petitioner placed his claim of jury misconduct "in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *See* Order entered October 1, 1993, docket no. 55, at 2 (quoting *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir.1988)). As a result, the Court held that the state courts must be given an opportunity to consider the newly discovered evidence, and Petitioner had not exhausted his state court remedies. The Court stayed the case, rather than dismiss it, citing the "magnitude of petitioner's constitutional claim." Finally, the Court ordered the parties to file status reports every six months to apprise the Court of the status of the state court proceedings, and "reserve[d] the right to lift the stay in the future in the event the petitioner's claims before the state court do not proceed in a timely manner." *Id.*

On October 26, 1993, Simmons filed in the Snohomish County Superior Court, before Judge Gerald Knight, the original trial judge, a motion for relief from judgment. After holding an evidentiary hearing in September 1994,[2] Judge Knight denied Simmons's motion for relief from judgment, making findings in open court. Subsequently, on February 15, 1995, after Simmons had filed his Notice of Appeal, Judge Knight entered written Findings of Fact and Conclusions of Law denying Simmons's motion for relief.

Judge Knight found that Leverington has, and had at the time she was interviewed by the investigator, frontal lobe dysfunction, and fairly significant impairment in cognitive functioning, memory, and comprehension. She is also very vulnerable to suggestion and

---

**2.** The delay in holding the evidentiary hearing apparently was attributable in large part to the petitioner's desire to have juror Leverington examined by a clinical neuropsychologist. According-

ing to the State, the examination and report took several months to complete. The balance of the time was devoted to briefing and pre-hearing preparation.

hard of hearing. As a result, she was "marginally competent to testify as a witness." *See* Findings and Conclusions dated February 15, 1995, Ex. 6 to Petitioner's Motion for Summary Judgment. Judge Knight found that Leverington gave conflicting testimony at the hearing: sometimes she testified that she had read the newspaper articles during the trial; at other times, she testified that she had read only one article. Based on all the evidence presented, the trial judge made the following findings:

12. On considering all the evidence and the demeanor of the witness, the court cannot find by a preponderance of the evidence that Ms. Leverington committed misconduct as a juror (other than the misconduct that she admitted in 1984).

13. The Court cannot find by a preponderance of the evidence that Ms. Leverington did or did not read the newspaper articles during the trial (other than the article she admitted to reading during her post-verdict in camera testimony).

14. The court finds Ms. Leverington cut out newspapers articles, but makes no finding as to when she cut out the newspaper articles.

*Id.* at Findings 12–14. Because the petitioner failed to satisfy his burden to prove that Leverington committed the misconduct at issue, the trial court denied Simmons's motion for relief from judgment of conviction. Simmons appealed the judge's ruling to the state court of appeals, where it is still pending.

On May 1, 1995, Simmons filed in this Court a motion to lift stay of habeas corpus proceedings, for evidentiary hearing, and for writ of habeas corpus. At a status conference on July 7, 1995, the Court lifted the stay, citing the length of time that Mr. Simmons had been incarcerated and the strength of his constitutional claim.

The parties have now filed their cross-motions for summary judgment. The Court heard argument from counsel on December 20, 1995, and took the matter under advisement.

II. *Exhaustion of State Remedies*

■ As a preliminary matter, this Court must determine whether it should consider Mr. Simmons's habeas petition prior to exhaustion of his state appeals. The general rule is that a state prisoner must exhaust all available state remedies before a federal court may consider the merits of his habeas petition. 28 U.S.C. § 2254(b); *Rose v. Lundy,* 455 U.S. 509, 516, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982). In order to satisfy the exhaustion requirement, the petitioner must fairly present his claims to the highest state court. *Duncan v. Henry,* —— U.S. ——, ——, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (per curiam).

■ The exhaustion requirement is not jurisdictional. *Hendricks v. Zenon,* 993 F.2d 664, 672 (9th Cir.1993), *amended,* (9th Cir. 1993). It is essentially a matter of federalism and comity, and federal courts have the discretion to dispense with the rule "in rare cases where exceptional circumstances of peculiar urgency are shown to exist." *Id.* (quoting *Granberry v. Greer,* 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987)).

■ Under 28 U.S.C. § 2254(b), the federal courts need not defer to the state judicial process when no appropriate remedy exists at the state level or when there are circumstances rendering the state process ineffective to protect the rights of the prisoner. The Ninth Circuit has held that "extraordinary delay" in the state courts can render state corrective processes "ineffective" within the meaning of § 2254(b), and that exhaustion is not required in such cases. *Phillips v. Vasquez,* 56 F.3d 1030 (9th Cir.) (citing *Coe v. Thurman,* 922 F.2d 528, 530 (9th Cir. 1991)), *cert. denied,* —— U.S. ——, 116 S.Ct. 683, 133 L.Ed.2d 530 (1995). "[U]nusual delay in the state courts may justify a decision to protect the prisoner's right to a fair and prompt resolution of his constitutional claims despite the jurisprudential concerns that have led [this Circuit] to decline to review a claim or to require full exhaustion in other cases in which a proceeding related to the federal petition is pending in state court." *Id.*

In *Phillips,* the Ninth Circuit's most recent decision addressing delay in state court proceedings, the petitioner had been convicted in 1980 of first degree murder with special circumstances, and was subsequently sen-

tenced to death in a separate sentencing trial. In 1985, the California Supreme Court affirmed Phillips's conviction but reversed his death sentence. Phillips was not resentenced to death until 1992, and the automatic appeal from that sentence had been pending since early 1993. Phillips filed a petition for writ of habeas corpus under § 2254 in 1992. His petition contained only claims arising from his conviction; there were no claims challenging his sentence, which was still under review by the state courts. The district court dismissed the habeas petition without prejudice for, among other reasons, failure to exhaust available state remedies. The Ninth Circuit reversed, holding that district courts may properly review a habeas petition containing only exhausted issues. The court further held that the extraordinary delay—already fifteen years since the date of conviction—in considering Phillips's constitutional challenges to his conviction so endangered his right to a fair retrial as to outweigh any jurisprudential concerns. The Court stated:

> The prejudice inherent in such a delay is quite evident. For fifteen years, Phillips has been compelled to remain in prison under a possible sentence of death while being denied the opportunity to establish the unconstitutionality of his conviction. In addition, during so long a delay, there is a substantial likelihood that witnesses will die or disappear, memories will fade, and evidence will become unavailable. In short, the opportunity for a fair retrial diminishes as each day passes.

> \*    \*    \*    \*    \*    \*

> Balanced against the significant harms that may arise from further delay are relatively weak jurisprudential concerns. Comity concerns in this case are practically nonexistent since the state has had a full and fair opportunity to review the validity

of Phillips' conviction and its decision regarding that conviction is final.

*Id.* at 1036 (internal citations omitted).

The Court concludes that this case is one of those exceptional cases, like *Phillips,* where the Court must dispense with the exhaustion requirement to serve the interests of justice. Petitioner has been imprisoned for over eleven years pursuant to a conviction which is now subject to serious challenge. His entire constitutional claim hinges on the testimony and credibility of one witness, who is elderly, marginally competent, and in poor health. Although his state court appeal is proceeding with due speed, the parties agree that final resolution of this matter by the state courts is at least a year away. Because petitioner's ability to prove his claim continues to diminish rapidly over time, and is at risk of being lost, justice requires that his habeas petition be heard expeditiously.[3]

### III.  *Need for Evidentiary Hearing*

■ "A habeas corpus petitioner is entitled to an evidentiary hearing if he has alleged facts which, if proven, would entitle him to relief and he did not receive a full and fair evidentiary hearing in a state court." *Greyson v. Kellam,* 937 F.2d 1409, 1412 (9th Cir.1991) (quoting *Norris v. Risley,* 878 F.2d 1178, 1180 (9th Cir.1989)). The corollary to this is that no hearing is required if either the state court has reliably found the relevant facts, or there are no disputed facts and the claim presents a purely legal question. *Hendricks v. Vasquez,* 974 F.2d 1099, 1103 (9th Cir.1992), *amended, reh'g denied,* (9th Cir.1992). If the state court has reliably found the relevant facts, the state court's factual determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(d).

■ Here, petitioner argues that an evidentiary hearing is required in his habeas

---

**3.** Petitioner has an urgent need to know, for example, whether an evidentiary hearing is required on his habeas claims. Even though this Court ultimately determined that petitioner is not entitled to an evidentiary hearing on his juror misconduct claim, that ruling is subject to appellate review. Under the unique circumstances of

this case, the Ninth Circuit should be given the opportunity as soon as possible to review whether petitioner is entitled to an evidentiary hearing. A remand from the Ninth Circuit ordering this Court to hold an evidentiary hearing would be a hollow victory for petitioner if his sole witness was no longer available.

proceedings because the state court did not reliably find the relevant facts. Petitioner contends specifically that the state court's findings concerning juror misconduct are not binding because the trial judge declined to find whether Leverington had or had not read the additional newspaper articles before or during trial. The Court rejects this argument.

█ The extent, if at all, to which the jurors saw or discussed extrinsic evidence is a question of historical fact,[4] and state court findings on that issue are entitled to a presumption of correctness. *Burks v. Borg,* 27 F.3d 1424, 1432 (9th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995). *See also Tinsley v. Borg,* 895 F.2d 520, 525 (9th Cir.1990) (on federal habeas corpus review, the question of the partiality of an individual juror is not a question of mixed law and fact, but rather "it is plainly one of historical fact"), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991). Thus, if Judge Knight made factual findings as to whether juror Leverington was exposed to extrinsic evidence during trial, that finding would be entitled to a presumption of correctness.

Petitioner contends that Judge Knight failed to reach the ultimate factual issue of whether Leverington read the newspaper articles, and thus no presumption of correctness attaches to Judge Knight's Findings of Fact.[5] However, "not every finding of fact need be stated on the record in infinite detail and clarity. In certain circumstances [courts] will recognize that a factual determination is implicit in the actions taken by the state court." *Knaubert v. Goldsmith,* 791 F.2d 722, 727 (9th Cir.), *cert. denied,* 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986).

In *Buck v. Green,* 874 F.2d 1578, 1580 (11th Cir.1989), for example, the Eleventh Circuit held that the district court improperly denied a presumption of correctness to the state court's factual finding that defendant Buck had failed to prove improper racial composition of the jury pools. Both the state trial court and appeals court had found that the accuracy of the racial designations were "unsubstantiated," and therefore, determined that Buck did not establish a prima facie case of discrimination. The magistrate judge refused to apply the § 2254(d) presumption of correctness to the state court's determination because "the merits of the factual dispute were not resolved in the State court hearing." *Id.* at 1580–81. The district court adopted the magistrate judge's recommendation and after holding an evidentiary hearing granted Buck's habeas petition. The Eleventh Circuit vacated the district court's judgment, finding that the district court failed to accord the state court's finding a presumption of correctness. The court reasoned:

> "Unsubstantiated" means "not proved;" and the state trial court's determination that the defendant's allegations of discrimination were unsupported amounts to a finding of fact of no underrepresentation of blacks or women.

*Id.* at 1581.

In a Ninth Circuit case, *Tinsley v. Borg,* 895 F.2d 520, 525–26 (9th Cir.1990), the court held that a state court's denial of the defendant's motion for a new trial based on juror bias, after a lengthy hearing on the question of the juror's bias, necessarily implied a finding that the juror was not biased. Thus, even though the trial judge failed to make a specific finding as the juror's credibility, the court's implicit finding was that she was not biased, and that factual determination was entitled to a presumption of correctness. *See also Van Pilon v. Reed,* 799 F.2d 1332, 1338

---

4. In *Thompson v. Keohane,* — U.S. ——, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), the Supreme Court reaffirmed that "issues of fact" mean "basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators....' " *Id.* at ——, 116 S.Ct. at 464 (citations omitted). The Court referred to these facts as "what happened" facts. The Court noted that certain factual issues, such as competency to stand trial and juror impartiality, extend beyond the determination of "what happened," but nevertheless are subject to the

presumption of correctness because their resolution depends heavily on the trial court's appraisal of witness credibility ability, which cannot be easily discerned from an appellate record. *Thompson* supports this Court's conclusion that the question of whether Leverington read the newspaper articles is an issue of fact.

5. Under 28 U.S.C. § 2254(d)(1), there is no presumption of correctness where "the merits of the factual dispute were not resolved in the State court hearing."

(9th Cir.1986) ("[a]lthough the state court did not expressly resolve the remaining five factual issues tendered by Pilon, those issues were implicitly resolved against him by the state court's denial of his suppression motion").

Here, Judge Knight stated in Finding 13 that he "cannot find by a preponderance of the evidence that Ms. Leverington did or did not read the newspaper articles during the trial (other than the article she admitted to reading during her post-verdict in camera testimony)." In Finding 12, the trial court found that "[o]n considering all the evidence and the demeanor of the witnesses, the court cannot find by a preponderance of the evidence that Ms. Leverington committed misconduct as a juror (other than the misconduct that she admitted in 1984)." These statements amount to a finding that it is *not* "more likely than not" than Leverington read the articles before or during the trial. This is a finding of fact entitled to the presumption of correctness under § 2254(d).

Because the trial court held a full and fair hearing on the petitioner's juror misconduct claim and made factual findings concerning the juror's misconduct, this Court must apply the presumption of correctness to those facts. As a result, there is no basis for holding an evidentiary hearing on petitioner's claim.[6] In addition, the Court has read the transcript of the evidentiary hearing before Judge Knight, and concludes that nothing would be gained by holding another hearing in this Court. Ms. Leverington's testimony was inconsistent and contradictory; she would admit to wrongful conduct upon direct examination, and then fully deny it on cross-examination. Her mental limitations and vulnerability to suggestion are apparent. Given Ms. Leverington's mental impairment, this Court agrees with Judge Knight's statement at the hearing that, "I don't think we will ever know the truth." Transcript of Proceedings, Ex. 7 to Petitioner's Motion for Summary Judgment, at 59.

### IV. *Has Simmons Proved Constitutional Error?*

On habeas review, state court judgments of conviction and sentence carry a presumption of finality and legality. *Brecht v. Abrahamson,* 507 U.S. 619, 632, 113 S.Ct. 1710, 1719, 123 L.Ed.2d 353 (1993). State court judgments may be set aside only when the state prisoner carries his burden of proving that his detention "violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *McKenzie v. McCormick,* 27 F.3d 1415, 1418 (9th Cir.1994) (citation omitted), *cert. denied,* —— U.S. ——, 115 S.Ct. 916, 130 L.Ed.2d 797 (1995). The burden is on the petitioner to establish certain defects to overcome the presumption of correctness. *Keal-ohapauole v. Shimoda,* 800 F.2d 1463, 1465 (9th Cir.1986), *cert. denied,* 479 U.S. 1068, 107 S.Ct. 958, 93 L.Ed.2d 1006 (1987). Petitioner must also convince the district court by a preponderance of the evidence of the facts underlying the alleged constitutional error. *McKenzie,* 27 F.3d at 1418–19.

Petitioner Simmons has the burden to prove by a preponderance of the evidence that juror misconduct occurred. In view of the state court's finding that it was not "more likely than not" that juror Leverington read the articles during the trial, which this court must presume to be true, petitioner cannot meet his burden of proving that misconduct occurred.

### V. *Impact of O'Neal v. McAninch*

The petitioner argues that *O'Neal v. McAninch,* —— U.S. ——, ——, 115 S.Ct. 992, 994, 130 L.Ed.2d 947, 952 (1995), requires this Court to grant him habeas relief despite his failure to prove juror misconduct by a preponderance of the evidence. In *O'Neal,* the Supreme Court held that when a federal habeas court finds a constitutional trial error but is in "grave doubt" about whether that error had a "substantial and injurious effect or influence in determining

---

**6.** Petitioner argues as an alternative basis for not applying the presumption of correctness to the state court findings that the state court applied the wrong legal standard to the question of prejudice. In the trial court's written findings, however, the court reached only the question of whether misconduct occurred, and the court applied the correct legal standard, i.e., proof by a preponderance of the evidence, to that question.

the jury's verdict," the error is not harmless and habeas relief must be granted. The Court explained that "grave doubt" means that "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.,* —— U.S. at ——, 115 S.Ct. at 994, 130 L.Ed.2d at 951. Petitioner argues that the "logic and spirit" of *O'Neal* applies with equal force to the threshold question on habeas review of whether the petitioner has shown that constitutional error occurred. According to petitioner, *O'Neal* requires courts to grant habeas relief not only in cases where the courts are in grave doubt as to the harmlessness of a constitutional error, but also in those rare cases where they have grave doubt about whether a constitutional error occurred. Petitioner submits that because the state court here was in "virtual equipoise" as to whether misconduct occurred, he must prevail.

However appealing petitioner's argument may be under the unique facts of this case, the Court must reject it as contrary to existing law. The law is clear that petitioners seeking habeas relief bear the burden of proving that constitutional error occurred. *Kealohapauole,* 800 F.2d at 1465; *McKenzie,* 27 F.3d at 1418–19. Nothing in *O'Neal* suggests that petitioner no longer bears the threshold burden of establishing constitutional error.

The Supreme Court stated specifically that the *O'Neal* reasoning applies to only one "narrow circumstance": when a federal judge in a habeas proceeding is in "grave doubt" about whether a trial error of federal law was harmless. *O'Neal,* —— U.S. at ——, 115 S.Ct. at 994, 130 L.Ed.2d at 952–53. Thus, *O'Neal* applies where the petitioner has satisfied his initial burden of establishing constitutional error, but the court is uncertain as to whether the error was prejudicial. *O'Neal* does not relieve the petitioner of his threshold burden to prove that a constitutional error in fact occurred.

Although the Court concludes that petitioner must be denied habeas relief for failure to prove that constitutional error occurred, the Court will nevertheless go on to address the numerous other issues raised by the parties in their briefs.

## VI. *The Prejudicial Nature of the Articles*

### A. *Standard for Relief: Structural Error Requiring Reversal or Harmless Error Standard*

■ Petitioner contends that jury exposure to facts not in evidence constitutes a structural trial error requiring automatic reversal. Alternatively, petitioner argues that the error was a "Footnote Nine Error," which refers to a footnote in *Brecht* which provides that in unusual cases automatic reversal may be required if a trial error, although not structural, is so deliberate and egregious as to infect the integrity of the entire proceeding. Finally, petitioner argues that the Ninth Circuit does not apply the *Brecht* standard to jury misconduct cases; rather, petitioner contends, reversal is required if there exists a "reasonable *possibility* that the extrinsic evidence *could* have affected the verdict," and the prosecution fails to show beyond a reasonable doubt that the extrinsic evidence did not affect the verdict. *See* Petitioner's Opening Brief at 66 (citing *United States v. Navarro–Garcia,* 926 F.2d 818, 821 (9th Cir.1991); *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir.1988)).

Petitioner ignores recent Ninth Circuit authority that specifically applies the *Brecht* standard to claims of jury misconduct raised in habeas cases. In *Lawson v. Borg,* 60 F.3d 608, 612 (9th Cir.1995), the Ninth Circuit set out the standard as follows:

> Jury exposure to facts not in evidence deprives a defendant of the rights to confrontation, cross-examination and assistance of counsel embodied in the Sixth Amendment. However, a petitioner is entitled to habeas relief only if it can be established that the constitutional error had "substantial and injurious effect or influence in determining the jury's verdict." Whether the constitutional error was harmless is not a factual determination entitled to the statutory presumption of correctness under 28 U.S.C. § 2254(d).

(Internal citations omitted).

### B. *Prejudice*

■ Although not every newspaper article allegedly read by juror Leverington con-

tained prejudicial information, certain articles included information so prejudicial as to constitute grounds for reversal. Certain articles noted, for example, that Mr. Simmons was convicted of armed robbery in 1983. Another article recounted an informant's testimony, given outside the presence of the jury, that Simmons was planning an armored car robbery in Bellevue and was involved in numerous illegal activities, including a $1.7 million marijuana-growing operation. Such extrajudicial information is of such a highly prejudicial and inflammatory nature that it would likely have had a substantial influence on the verdict. *See Jeffries v. Blodgett,* 5 F.3d 1180, 1190–91 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).

The State argues that even if Leverington read the articles in question, petitioner cannot meet the prejudice standard because (1) the information (other than the one comment regarding the marijuana farm) was never communicated to the other jurors, and (2) Leverington has stated that she was not influenced by reading the newspaper articles. The Court rejects both arguments. First, jurors' subjective assessments of whether they were influenced by extrajudicial information are generally accorded very little weight because jurors are usually reluctant to admit to bias or fail to recognize it. *See Dickson v. Sullivan,* 849 F.2d 403, 406 (9th Cir.1988). Second, *Lawson* makes clear that the prejudice standard can be met even if only one juror was improperly influenced:

> [O]ur finding of prejudice is not swayed by the state's contention that not all of the jury members were exposed to the extrajudicial evidence. The number of jurors affected by the misconduct does not weigh heavily in the prejudice calculus for even a single juror's improperly influenced vote deprives the defendant of an unprejudiced, unanimous verdict.

*Lawson,* 60 F.3d at 613. Here, assuming Leverington read all the articles, the nature of the extrajudicial information at issue, together with the juror's admission that she read the newspaper to gain an understanding of the testimony of the witnesses, would be sufficient to establish that Leverington was substantially influenced by the extrajudicial information.

### VII. *Conclusion*

The state court found that it was not more likely than not that Leverington read the twenty newspaper articles in question. Pursuant to 28 U.S.C. § 2254(d), this Court must apply a presumption of correctness to the state court's factual findings. As a result, petitioner cannot establish by a preponderance of evidence that constitutional error occurred. Without a finding that constitutional error occurred, there is no basis for granting habeas relief. The petitioner's petition for writ of habeas corpus is DENIED.

The Court further concludes that, for the reasons stated in the Court's Order dated October 11, 1991, the petitioner is not entitled to habeas relief based on juror Leverington's original admission to Judge Knight, made immediately after the verdict, that she read one newspaper article.

IT IS SO ORDERED.